IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JONATHAN ELLER, as partner of the de facto partnership, Mormon Match, <br><br> Plaintiff, <br> v. <br><br> INTELLECTUAL RESERVE, INC., a Utah Corporation, holding intellectual property of the Church of Jesus Christ of Latter-day Saints, <br><br> Defendant. | CIVIL ACTION NO.: |

## VERIFIED COMPLAINT SEEKING DECLARATORY JUDGMENT AND PRELIMINARY INJUNCTION

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff JONATHAN ELLER, as partner of the de facto partnership Mormon Match seeks injunctive relief against Defendant INTELLECTUAL RESERVE, INC. from taking any action to shut down or interfere with Jonathan's website www.dateamormon.com, pending this Court's decision on the his claim for declaratory judgment on the following grounds:

### PARTIES

1. Jonathan Eller is a citizen of Texas residing at 18630 Minden Oaks Drive, Spring, Texas 77388.[1]

2. Upon information and belief, Intellectual Reserve, Inc. ("IRI") is a nonprofit Utah Corporation holding intellectual property used by The Church of Jesus Christ of Latter-day Saints (the "Church").

---
[1] This is also the corporate address of Mormon Match.

## JURISDICTION AND VENUE

3. Subject matter jurisdiction is proper under Title 28 U.S.C. § 1338(a) as this court has original jurisdiction of issues arising under trademark law.

4. IRI is subject to the personal jurisdiction of this Court through its substantial contacts with the State of Texas as holding intellectual property for the Church.

5. Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b)(1) as both Plaintiff and defendant reside in this district.

## NATURE OF THE CASE

6. This is an action for preliminary injunction and declaratory judgment.

7. This case concerns IRI's attempts to shut down plaintiff's website www.dateamormon.com (the "Dating Website").

8. The purpose of the Dating Website is to provide online dating, social introduction, and social networking services for Mormons.

9. In short, Jonathan Eller, a Mormon, proposes to run a dating website for Mormons.

10. IRI has asserted and continues to assert that trademark law and other intellectual property laws prohibit Jonathan from using the word "Mormon" to promote, market, or otherwise advertise the Dating Website.

11. Mormon Match's logo displays man and woman stick figures under the "M" in "Mormon" in blue, above "Match" in gold:



12. IRI has asserted total ownership of the word "Mormon" for any advertising or branding and specifically for the Dating Website.

13. Accordingly, IRI opposed registration of Mormon Match's logo by commencing a proceeding before the Trademark Trial and Appeal Board (the "Board").

14. The Board issued a scheduling order (known as an institution order) at the beginning of the proceeding.

15. That order gave Jonathan until April 5, 2014 to respond to IRI's Notice of Opposition.

16. One day before Jonathan was due to respond, on Friday April 4, 2014, IRI sent a demand to Mormon Match's web-hosting company Linode, LLC ("Linode") alleging the Dating Website contained infringing content and insisting it be shut down.

17. Upon information and belief, counsel who drafted this demand is also an attorney at the firm representing IRI in the Board proceeding.

18. According to the demand letter, the allegedly infringing content is the word "Mormon" and a background image of the iconic Mormon Temple in Salt Lake City, Utah (the "Salt Lake Temple"), over which IRI holds no copyright.

19. Indeed, in that demand letter, IRI asserted total ownership of all words and images that may be associated with the Church.

20. IRI's letter nearly caused the Dating Website to be shut down, on the eve of Jonathan's response in the Board proceeding.[2]

21. This threatened shut down was prevented only after Mormon Match's counsel in the Board proceeding responded that evening and persuaded the web-hosting company to hold off.[3]

22. IRI's insistence that Mormon Match not use any words or images relating to the Church on the Dating Website essentially gags Jonathan from accurately describing or promoting the Dating Website to prospective Mormon customers.

23. As a result, Jonathan's business is at serious risk just months before the dating service is planned to launch on the Dating Website.

24. Upon information and belief, Jonathan cannot seek a restraining order in the ongoing Board proceeding, because the Board is an administrative body whose jurisdiction is limited to determining the registrability of marks.

25. Accordingly, Jonathan commenced this action seeking relief here.

**FACTUAL ALLEGATIONS**

26. Plaintiff Jonathan Eller is the founder of Mormon Match.

27. He is a Mormon and an active member of the Church in full fellowship.

---

[2] Shutting down the site would also have barred Jonathan, his in house, attorney, and his business partners from accessing any emails saved on the site's mail server, including emails relevant to the presentation of their response.

[3] Plaintiff has since filed a motion to dismiss in the Board proceeding, seeking dismissal of all of IRI's claims. *See*, exhibit 10 to the accompanying declaration of Siddartha Rao, Esq. dated April 6, 2014 ("Rao Decl.").

28. Matthew LaPointe is a partner of Mormon Match.

29. He is also a Mormon and an active member of the Church in full fellowship.

30. Jonathan founded Mormon Match to create a more effective online website to bring single Mormons together.

31. He wanted to create an online forum that is safe and comfortable for practicing members of the Church.

32. He wanted this forum to facilitate relationships, dating, and marriages between Mormon users of his website.

33. Jonathan has spent two years of time and effort and a significant number of hours building, marketing, and promoting Mormon Match's business.

34. Because of these two years of effort, Mormon Match currently has active campaigns on all of the major social media sites, an active mail server with tens of thousands of opt-in email addresses, business cards and flyers, and more than thirty active volunteers in more than seven countries, helping promote Mormon Match to their Mormon friends and colleagues.

35. Gordon Child is currently hosting the Dating Website on a server run through web-hosting company Linode, LLC.

36. Gordon purchased the Dating Website on January 6, 2012, and was reimbursed by Jonathan.

37. The Dating Website has been live since June 16, 2006.

38. From that date, the Dating Website has displayed Mormon Match's logo.

39. The Dating Website has also displayed a background image of the iconic Salt Lake City Temple since June.

40. Since the Dating Website went live, and during Jonathan Eller's years of promotional efforts for Mormon Match, Jonathan never received any correspondence from a representative of Intellectual Reserve, Inc. or the Church saying that he couldn't use the word "Mormon" to promote Mormon Match.

41. On June 3, 2013 Jonathan filed an application Serial No. 85/949670 to trademark "MORMON MATCH (and Design)," i.e. Mormon Match's logo.

42. He sought registration for "Internet-based dating, social introduction, and social networking services."

43. After amendment, that application does not claim the words "Mormon Match" which are expressly disclaimed.

44. The Application only claims design elements such as shapes and colors.

45. The Application published in the *Official Gazette* of October 29, 2013 for opposition.

46. IRI, represented by the law firm of Kirton McConkie, successfully extended its time to oppose.

47. IRI eventually filed a Notice of Opposition No. 91215064 on February 4, 2014

48. In the Notice of Opposition, IRI asserts it owns "all right, title, and interest" to the mark "MORMON," an allegedly unregistered common law mark protected for an unspecified "variety of goods and services."

6

49. IRI also identifies seven of its registered trademarks which incorporate the word "Mormon."

50. These are U.S. Registration No. 3,239,919 for the mark "MORMON," U.S. Registration No. 3,715,744 for the mark "MORMON.ORG," U.S. Registration 2,883,572 for the mark "BOOK OF MORMON," U.S. Registration No. 2,266231 for the mark "MORMON TABERNACLE CHOIR," U.S. Registration No. 2,913,694 for the mark "MORMON TABERNACLE CHOIR (and Design)," U.S. Registration No. 1,524,555 for the mark "MORMON HANDICRAFT," and U.S. Registration No. 1,527,447 for the mark "MORMON HANDICRAFT" (the "Mormon Marks").

51. None of the Mormon Marks are claimed for goods and services similar to class 45 "Internet-based dating, social introduction, and social networking services."

52. Indeed, IRI was prevented from trademarking "MORMON" in class 45 for "religious services."

53. In that proceeding, years of correspondence between trademark examiner Jill Alt and IRI's counsel about application serial number 78/161091 included findings that "MORMON" is "merely descriptive" and "appears to be generic," (Mar. 18, 2003 Office Action); "is incapable of serving as a source-identifier for [the Church's] goods and/or services," (Nov. 24, 2003 Office Action); is "refused [registration] . . . because the proposed mark is generic for applicant's services," (Jul. 10 2004 Office Action); and is "the common descriptor of a key ingredient, characteristic or feature of

7

the goods[,] . . . generic and thus incapable of distinguishing source," (Nov 1, 2005 Office Action)

54. Similarly, when IRI attempted to trademark "MORMON.ORG" serial number 77/179068, the examiner initially refused registration because the mark is "merely descriptive because it consists of the merely descriptive wording "Mormon" for the subject matter of its services . . . combined with the top-level domain (TLD) '.ORG.,'" (August 27, 2007 Office Action); and "arguments that the proposed mark as a whole is not merely descriptive of the services in issue, fail [because] . . . [t]he proposed mark clearly describes the religion that is the subject mater of these services," (March 16, 2008 Office Action).

55. IRI now claims in the ongoing opposition proceeding that registration of Mormon Match's logo will cause false suggestion of connection, priority and likelihood of confusion, and dilution of its own Mormon Marks and its alleged common law mark in the word "Mormon."

56. On March 19, 2014, Plaintiff's counsel in the Board Proceeding sent a letter to Dale Hulse at Kirton McConkie, counsel for IRI, by first class mail and by email.

57. That letter informed attorney Hulse that Mormon Match was required to respond to the Notice of Opposition by April 5, 2014.

58. The letter also expressed Plaintiff's view that IRI's claims were without merit.

59. Nonetheless the letter stated "we would like to negotiate a settlement," involving a stipulation of dismissal of IRI's claims with prejudice.

60. Plaintiff received no response to that letter.

61. On March 21, 2014, Plaintiff's counsel forwarded that letter by email from a different account to confirm counsel's receipt of the letter.

62. Plaintiff received no response to that email.

63. On March 26, 2014, plaintiff sent a second letter through counsel by email and first class mail to attorney Hulse.

64. That March 26, 2014 letter quotes numerous findings by trademark examiner Jill Alt that "Mormon" cannot be registered for class 45 religious services as it is generic and descriptive for those services.

65. The March 26, 2014 letter reiterated the Mormon Match's response was due to be filed April 5, 2014.

66. The March 26, 2014 letter reiterated a request that IRI consider settlement.

67. Plaintiff received no response to that letter.

68. On April 2, 2014 Plaintiff's counsel called IRI's counsel and left him a message.

69. Plaintiff's counsel reiterated that Mormon Match's time to answer was April 5, 2014.

70. Counsel requested a chance to speak with attorney Hulse.

71. Plaintiff received no response to that message.

72. On April 4, 2014 one day before answer was due, Jonathan Eller received an email from Gordon Child stating that the Dating Wesbsite's server would have to be shut down.

73. That email forwards a demand that a Kirton McConkie attorney sent on April 4, 2013 to Mormon Match's web-hosting company, Linode.

74. The demand was sent on behalf of IRI.

75. The demand claimed that the "term MORMON and images of the Salt Lake Temple . . . are owned by IRI."

76. The Dating Website uses the term "Mormon" in its logo and displays a background image of the iconic Salt Lake Temple.

77. Further, the domain name of the Dating Website is www.dateamormon.com, which contains the word "Mormon."

78. IRI's insisted Linode must shut down the Dating Website for violating Linode's Terms of Service prohibiting unlawful use.

79. IRI's demand letter asserted trademark and trade dress violations and unfair competition as a basis for unlawful use.

80. Linode thereafter contacted Gordon Child with an instruction to remove all "infringing" content, and a notice that Linode would be required to "remove or disable access to the material expeditiously" and would "power off" the server "in 24 hours" unless Gordon complied by removing the material IRI insisted was infringing.

81. Because IRI insisted the word "Mormon" was infringing, removal of all "infringing" content would have required shutting down the Dating Website.

82. IRI's assertion it owns the word "Mormon" is without legal basis.

83. Moreover, IRI did not assert copyright ownership of any image of the Salt Lake Temple appearing on the Dating Website.

84. Upon information and belief, they do not own any such image.

85. Plaintiff's counsel in the Board proceeding drafted a response to Linode the evening of April 4, 2014.

86. He uploaded it to their site through Gordon Child's account, following Linode's internal process for responding to such complaints.

87. Based on that response and its own review of the issue, Linode was persuaded not to shut down the Dating Website at this time.

88. Linode also stated it would send the response to the Kirton McConkie attorney who had complained and insisted Linode shut down the Dating Website.

89. The next day Plaintiff filed a motion to dismiss all of IRI's claims with prejudice in the Board proceeding.

90. Jonathan has no intention or desire to own the words "Mormon" or "Match."

91. He merely wants to protect his logo's design and its brand value.

92. Shutting down the Dating Website would severely damage Jonathan's business reputation and likely cause him to lose thousands of potential early customers.

93. Worse, it will be impossible for Jonathan to launch or promote his business if he is prevented from ever using the word "Mormon" or any words or images that have any association with the Church.

94. The purpose of Jonathan's business is to help Mormons meet online.

95. Indeed, insisting he not use any words or images associated with the Church will destroy his business.

96. Plaintiff is genuinely worried that IRI will attempt further action to shut down the Dating Website, before the Board can decide Mormon Match's motion to dismiss or otherwise resolve IRI's claims.

## COUNT I
### (Declaratory Judgment pursuant to 28 U.S.C. § 2201 of Non-Infringement under the Lanham Act)

97. The preceding paragraphs are incorporated as if restated fully in this Count I.

98. Declaratory Judgment is appropriate here as it will "terminate the controversy" giving rise to the proceeding.

99. The "controversy" is of a justiciable nature and is not advisory.

100. Indeed, IRI has already tried once to shut down Jonathan's Dating Website based on its purported complete ownership of the word "Mormon"

101. Plaintiff has a practical interest in the declaration sought and all parties adversely affected are named Defendants.

102. Here, the Board is actively adjudicating the issue of whether Mormon Match's logo can be registered in the opposition commenced by IRI.

103. Its findings may be preclusive regarding some of IRI's assertions of infringement, but it lacks the jurisdiction to adjudicate infringement claims.

104. Here, the question of infringement under federal trademark law is clear and can be easily resolved by this Court.

105. Neither IRI nor the Church has complete ownership of the word "Mormon."

106. They cannot claim ownership a word that exists in the public domain and is an integral part of public discourse.

107. Generic terms are not subject to trademark protection.

108. Descriptive terms receive at best weak trademark protection.

109. "Mormon" is generic and/or descriptive for most goods and services.

110. Accordingly, any trademark rights IRI or the Church may have in "Mormon," are very weak.

111. IRI's existing Mormon Marks are not registered for online dating or similar services.

112. Upon information and belief, the general public does not associate IRI or the Church with online dating websites, and is highly unlikely to be confused by Mormon Match's use of the word "Mormon."

113. Even if IRI or the Church somehow had a trademark right to "Mormon" as applied to online dating (they do not), and even if IRI and the Church could show confusion to state a claim for infringement (they can not), Mormon Match's use is non-infringing statutory fair use.

114. Mormon Match's founder and developer are Mormons.

115. Mormon Match's target customers are Mormon.

116. A primary meaning of Mormon is Latter-day Saint.

117. Thus, the use of "Mormon" to mean "Latter-day Saint," constitutes fair use under 15 U.S.C. § 1115(b)(4).

118. It is "the use of the name, term, or device charged to be an infringement" "otherwise than as a mark" "which is descriptive of and used fairly and in good faith only to describe the goods or services."

119. In other words, it is the use of Mormon to mean Mormon, here signifying dating services provided by Mormons to Mormons.

120. For the foregoing reasons, Plaintiff respectfully requests that this Court issue an order declaring that neither IRI nor the Church has total ownership of the word "Mormon" and that further, Plaintiff does not infringe the trademark or trade dress rights of IRI or the Church by displaying the word "Mormon," and publicly available un-owned image of the Mormon Temple in Salt Lake City, Utah on the Dating Website or in its promotional materials.

## COUNT II
### (Preliminary Injunction)

121. The preceding paragraphs are incorporated as if restated fully in this Count II.

122. Plaintiff is likely to succeed on the merits of its claim under the Lanham Act based on IRI's weak trademark rights in "Mormon."

123. No facts support IRI's assertion of trademark infringement

124. "Mormon" is generic or at best descriptive.

125. Upon information and belief, the general public does not associate the Church with providing online dating services and is unlikely to be confused about the source of such services.

14

126. Alternately and additionally, Plaintiff's use is non-infringing as statutory fair use.

127. Absent an injunction, Jonathan Eller faces irreparable harm in potential loss of business reputation, loss of customers, damage to the value of Mormon Match's domain name and logo, damage to the goodwill associated with his extensive marketing and promotional efforts, and total loss of his business.

128. The balance of equities clearly favors Jonathan Eller.

129. Mormon Match has openly displayed the name, logo, and image that IRI now claims to be infringing since June of last year.

130. Jonathan Eller's two-year promotional efforts with online Mormon communities and outreach to thousands of Mormons have been open and easily discoverable.

131. Yet IRI has until recently not complained of any infringement.

132. Apparently IRI and the Church were not harmed in the last two years of Jonathan's promotion and advertising or in the time that Mormon Match has continuously and openly displayed its name, logo, and image of a Mormon Temple on the Dating Website.

133. The Dating Website is not offering dating services at this time as it is still under development.

134. Those services are planned to launch approximately two months from today.

135. Accordingly, IRI is not harmed by issuance of a preliminary injunction.

136. However, Jonathan Eller will be harmed absent an injunction.

137. Finally public interest favors issuing an injunction.

138. The word "Mormon" and images relating to Mormonism are now part of the public domain.

139. Numerous websites offer dating services in a religiously themed manner.

140. Numerous online communities form around religious themes and use religious symbols and language to signify the identity of the members of these communities.

141. There are First and Fourteenth Amendment speech, expression, and assembly rights jeopardized by the position that IRI attempts to assert.

142. The pubic interest favors protecting those rights against IRI's claims of total ownership of the word "Mormon" and any image associated with Mormonism or the Church.

143. For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff a ten-day temporary restraining order enjoining the IRI or its parents, affiliates, or agents from interfering with operation of the Dating Website and that it grant a hearing to issue a preliminary injunction against such acts.

## **PRAYER FOR RELIEF**

Accordingly, Plaintiff requests an order:

i. Declaring that Defendant does not completely own the word "Mormon," or all images of Mormon Temples for purposes of advertising, promoting, or branding.

ii. Declaring that Plaintiff's use of the word "Mormon" and image of the Mormon Temple in Salt Lake City, Utah on its website is non infringing of IRI and the Church's alleged trademark and trade dress rights.

iii. Enjoining Defendant and any persons or entities acting on its behalf, including any officer, agent, employee or representative thereof, from taking further action to interfere with Mormon Match's operation of the Dating Website, pending a decision on the merits of this action; and

iv. Granting any other relief as the Court may deem just and proper.

Respectfully submitted,

_____
Siddartha Rao, Esq.
(*pro hac vice* pending)
*Counsel for Plaintiff*
121 E. 12th St. Apt. LG
New York, New York 10003
(646) 221 1846

_____
Kiernan McAlpine, Esq.
*Local counsel for Plaintiff*
(Admitted in the Southern
District of Texas)
3310 Louisiana St Ste 2413
Houston, TX 77006
(832)314-1383
Fax: (832)201-7814

# VERIFICATION

STATE OF TEXAS, COUNTY OF HARRIS ss:

I, Jonathan Eller, am the Plaintiff in the within action. I have read the foregoing complaint and know the contents thereof. The contents are true to my own knowledge except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

Subscribed and Sworn to
before me on
07/07/2014

_____
Jonathan Eller

_____
NOTARY PUBLIC

MUHAMMAD TARIQ
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 11/18/17