**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

JONATHAN ELLER,

      Plaintiff/Counterclaim Defendant,

      v.

INTELLECTUAL RESERVE, INC.,

      Defendant/Counterclaim Plaintiff.

Civil Action No. 4:14-cv-00914

**MEMORANDUM IN OPPOSITION TO *EX PARTE* MOTION FOR TEMPORARY**
**RESTRAINING ORDER AND PRELIMINARY INJUCTION**

# TABLE OF CONTENTS

**Page**

I.    FACTUAL BACKGROUND..........................................................................................1

    A.    The Nature of the Dispute.........................................................................1

    B.    The Lack of Need for Preliminary Relief ................................................1

    C.    The Co-Pending TTAB Proceeding..........................................................2

    D.    Intellectual Reserve Inc. and the Church................................................2

    E.    The Church's Federally Registered MORMON Marks............................3

    F.    The Church's Social Networking and Dating Related Services ...............5

    G.    Eller's Unauthorized Commercial Use of the MORMON Marks. ...........6

    H.    Eller's Unauthorized Application to Register the Mark MORMON MATCH .........7

    I.    Facts Relating to the Likelihood of Confusion.........................................8

        1.    Eller's Prior Knowledge of the Church's Prior Registered MORMON Marks.........................................................................8

        2.    The Similarity Between the Parties' Marks.................................9

        3.    The Similarity Between the Parties' Services ............................9

        4.    The Similarity in Prospective Customers .................................10

        5.    The Similarity in Trade Channels.............................................10

        6.    Eller's Intent to Cause Confusion and Injure the Church...........................10

        7.    The High Risk of Damage to IRI Posed by Eller's Uncontrolled Use of a Counterfeit MORMON Mark ..............................................10

        8.    Eller Will Not Be Damaged If He is Required to Adopt a New Trademark that Does Not Contain the Word "MORMON.\........................11

II.    APPLICABLE LEGAL STANDARDS .............................................................11

III.    ARGUMENT.........................................................................................................12

    A.    Plaintiff Cannot "Clearly Establish" that He is Likely to Prevail on the Merits ....................................................................................................12

1. Eller Has Not and Cannot Rebut the Church's Rights in its Well Known Family of Registered MORMON Marks. ....................................... 12

  a. The Church Enjoys Strong Trademark Rights in MORMON. ......... 12

  b. Eller Has Mischaracterized the PTO's Position with Regard to the MORMON Marks. ................................................................... 12

2. Eller's Use of MORMON MATCH Is Likely to Cause Confusion. ........... 14

3. Eller's "Affirmative Defenses" Are Invalid ................................................. 18

  a. Eller's Disclaimer of the Words "Mormon" and "Match" Does Not Defeat Likelihood of Confusion and May Promote Confusion ........................................................................................ 18

  b. "Mormon Match" is Not A Generic Term ...................................... 20

  c. Eller Has Not Used the Mark MORMON MATCH in Good Faith. ............................................................................................... 20

  d. Eller's Use of "Mormon" Is Not Fair Use ...................................... 21

B. Eller Will Not Suffer Irreparable Injury If His Motion is Denied. .......................... 22

C. Eller's Alleged Threatened Injury Does Not Outweigh the Harm that an Injunction Would Cause the Church. ........................................................................ 24

D. An Injunction Permitting "MORMON MATCH" to Move Forward as a Commercial Business Venture Will Disserve the Public Interest. .......................... 25

CONCLUSION ....................................................................................................................... 25

## Table of Authorities

**Page(s)**

CASES

*Advantus Capital Mgmt., Inc. v. Aetna, Inc.*,
    81 U.S.P.Q.2d 1743, 2006 WL 2916840 (D. Minn. 2006)....................................................25

*Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*,
    494 F.2d 3 (5th Cir. 1974) ...........................................................................................15

*Am. Rice, Inc. v. Producers Rice Mill, Inc.*,
    518 F.3d 321 (5th Cir. 2008) ................................................................................17, 24

*Amazing Spaces, Inc. v. Metro Mini Storage*,
    608 F.3d 225 (5th Cir. 2010) ......................................................................................15

*Amstar Corp. v. Domino's Pizza, Inc.*,
    615 F.2d 252 (5th Cir. 1980) ......................................................................................14

*Ass'n of Co-op Members, Inc. v. Farmland Indus., Inc.*,
    684 F.2d 1134 (5th Cir. 1982) ....................................................................................20

*Augusta Nat'l, Inc. v. Exec. Golf Mgmt., Inc.*,
    996 F. Supp. 492 (D.S.C. 1998) .................................................................................25

*Century 21 Real Estate Corp. v. Sandlin*,
    846 F.2d 1175 (9th Cir. 1988) ....................................................................................15

*Chemlawn Servs. Corp. v. GNC Pumps, Inc.*,
    690 F. Supp. 1560 (S.D. Tex. 1988), *aff'd*, 856 F.2d 202 (Fed. Cir. 1988) ...........................24

*CICCorp., Inc. v. AIMTech Corp.*,
    32 F. Supp. 2d 425 (S.D. Tex. 1998)...........................................................................18

*Compliance Review Servs., Inc. v. Callista Davis-Osuawu*,
    C.A. No. H-04-3635, 2006 WL 2385291 (S.D. Tex. Aug. 17, 2006) ....................................21

*Cont'l Motors Corp. v. Cont'l Aviation Corp.*,
    375 F.2d 857 (5th Cir. 1967) ................................................................................16, 19

*Country Floors, Inc. v. P'ship Composed of Gepner & Ford*,
    930 F.2d 1056 (3d Cir. 1991) .....................................................................................15

*Dennis Melancon, Inc. v. City of New Orleans*,
    703 F.3d 262 (5th Cir. 2012) ............................................................................22, 24, 25

*DFW Metro Line Servs. v. Sw. Bell Tel. Co.*,
    901 F.2d 1267 (5th Cir. 1990) (per curiam) ...........................................................22, 23

*DowBrands, L.P. v. Helene Curtis, Inc.*,
  863 F. Supp. 963 (D. Minn. 1994) .................................................................20

*Elvis Presley Enters., Inc. v. Capece*,
  141 F.3d 188 (5th Cir. 1998) .........................................................14, 15, 16

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
  762 F.2d 464 (5th Cir. 1985) .........................................................................23

*Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*,
  754 F.2d 591, 598 (5th Cir. 1985). .........................................................16, 20

*General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Kinship, Int'l, Inc.*,
  No. CV 87-8113 MRP, 1991 WL 11000345 (C.D. Cal. Oct. 7, 1991) ...............................18

*Gonannies, Inc. v. Goaupair.com, Inc.*,
  464 F. Supp. 2d 603 (N.D. Tex. 2006) .................................................................22

*Guy Carpenter & Co. v. Provenzale*,
  334 F.3d 459 (5th Cir. 2003) ......................................................................... vii, 11

*In re Loew's Theatres, Inc.*,
  769 F.2d 764 (Fed. Cir. 1985) .........................................................................13

*In re Nat'l Data Corp.*,
  753 F.2d 1056 (Fed. Cir. 1985) .........................................................................19

*J & J Snack Foods Corp. v. McDonald's Corp.*,
  932 F.2d 1460 (Fed. Cir. 1991) .........................................................................14

*Keane v. Fox Tel. Stations, Inc.*,
  Civ. No. H-03-1642, 2003 WL 22331255 (S.D. Tex. May 16, 2003).....................................22

*Kern River Gas Transmission Co. v. Coastal Corp.*,
  899 F.2d 1458 (5th Cir. 1990) ......................................................................... vii, 11

*KP Permanent Makeup, Inc. v. Lasting Impression I, Inc.*,
  543 U.S. 111 (2004).........................................................................21

*Medicine Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*,
  336 F.3d 801 (8th Cir. 2003) .........................................................................23

*Opticians Ass'n of Am. v. Independent Opticians of Am. Eyeglasses*,
  920 F.2d 187, 17 U.S.P.Q.2d 111 (3d Cir. 1990).......................................................25

*Pure Foods v. Minute Maid Corp.*,
  214 F.2d 792 (5th Cir. 1954) .........................................................................6

*Quantum Fitness Corp. v. Quantum LifeStyle Ctrs., LLC*,
 83 F. Supp. 2d 810 (S.D. Tex. 1999) ............................................................15, 24, 25

*Roto-Rooter Corp. v. O'Neal*,
 513 F.2d 44 (5th Cir. 1975) ..................................................................... vii, 14

*Soweco, Inc. v. Shell Oil Co.*,
 617 F.2d 1178 (5th Cir. 1980) ...............................................................21

*Sugar Busters LLC v. Brennan*,
 177 F.3d 258 (5th Cir. 1999) .................................................................21

*Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*,
 951 F.2d 684 (5th Cir. 1992) .................................................................19

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
 505 U.S. 763 (1992) ..............................................................................20

*Watchguard Techs., Inc. v. Valentine*,
 433 F. Supp. 2d 792 (N.D. Tex. 2006) ...................................................22

*White v. Carlucci*,
 862 F.2d 1209 (5th Cir. 1989) ...............................................................23

*Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*,
 698 F.2d 786 (5th Cir. 1983) .................................................................21

STATUTES

15 U.S.C. § 1052(f) ..............................................................................8, 19

15 U.S.C. § 1063 .......................................................................................2

15 U.S.C. § 1072 .......................................................................................8

15 U.S.C. § 1115(b) ................................................................................13

15 U.S.C. § 1115(b)(4) ...........................................................................21

OTHER AUTHORITIES

3 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 19:72 (4th ed. 1998) ...............18

5 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 30:47 (4th ed. 1998) ...............24

TMEP § 1203.01 (2013) ...........................................................................13

TMEP § 1216.01 (2013) ...........................................................................13

## Statement of the Nature and Stage of the Proceeding

In this declaratory judgment action, a trademark applicant, Plaintiff/Counter-Defendant Jonathan Eller ("Eller"), seeks a declaration that his use of the mark MORMON MATCH does not infringe the trademark rights of Defendant/Counter-Plaintiff Intellectual Reserve, Inc. (the "Church") in a family of federally registered and common law marks containing the word MORMON.  Eller has filed a Complaint and a motion for emergency relief, and the Church has filed an Answer, Affirmative Defenses, and Counterclaims for trademark infringement, unfair competition, cybersquatting and for a declaration that Eller is not entitled to register the mark MORMON MATCH.

## Statement of the Issues to Be Ruled Upon by the Court

Before the Court is Eller's *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction.  Injunctive relief may be granted only if the plaintiff *clearly establishes* four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest.  *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003); *Kern River Gas Transmission Co. v. Coastal Corp.*, 899 F.2d 1458, 1462 (5th Cir. 1990).

## Summary of the Argument

To establish that he is entitled to injunctive relief, Eller must demonstrate that his use of the mark MORMON MATCH is not infringing, *i.e.*, that the Church does not have protectable trademark rights in its family of "MORMON" Marks, despite the fact that the United States Patent and Trademark Office has repeatedly recognized such rights and that Eller's proposed use of MORMON MATCH is not likely to cause confusion, despite the fact that actual confusion has already occurred.

Eller is unable to rebut the Church's exclusive rights in its well-known family of Registered MORMON marks, many of which provide conclusive evidence of the Church's ownership of and exclusive right to use the MORMON marks in commerce.  Moreover, each of the factors this Court considers in making a determination regarding whether use of Eller's MORMON MATCH mark would cause a likelihood of confusion as to the Church's MORMON marks weighs heavily in the Church's favor.  *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 45 (5th Cir. 1975).  Eller's failure to meet the burden of proof is fatal to Eller's motion.

Likewise, Eller cannot establish irreparable harm because he can launch a website without using MORMON as a trademark or service mark, any injury he may suffer is compensable with money damages, and his alleged harm absent an injunction outweighs the irreparable harm the Church will suffer if an injunction is issued and Eller is permitted to infringe its federally registered MORMON marks.  Finally, the public interest weighs heavily in favor of avoiding the confusion Eller's use of MORMON MATCH has caused.

Eller is unable to meet his burden in demonstrating entitlement to preliminary injunctive relief, and the Court should deny his motion.

## I.     FACTUAL BACKGROUND.

Defendant and Counterclaim Plaintiff Intellectual Reserve, Inc. ("IRI") hereby opposes the Motion for Temporary Restraining Order filed by Plaintiff Jonathan Eller ("Eller").  The opposition is based in part on the attached declaration of Barry V. Taggart ("Taggart Decl.").

### A.     The Nature of the Dispute

This action arose after IRI objected to Eller's use and registration of the mark MORMON MATCH for a commercial dating site that Eller and others are planning to launch.  (Taggart Decl. ¶ 1).  In total disregard for IRI's long established rights in the mark MORMON, Eller filed a Declaratory Judgment Complaint and Motion for *Ex Parte* Temporary Restraining Order on April 7, 2014.  IRI filed an Answer, Affirmative Defenses and Counterclaims against Eller on April 29, 2014.  Although others are apparently aiding and abetting Eller in his lawsuit, none have been joined in the suit as yet.

The Complaint seeks to enable Eller to use the well-known MORMON mark for his own financial gain and his motion seeks to restrain IRI from enforcing its family of federally registered MORMON trademarks.  Among other things, Eller asks that IRI be precluded from disrupting Eller's social networking and dating website on which Eller is using the infringing mark MORMON MATCH.

### B.     The Lack of Need for Preliminary Relief

There is no need for issuance of a TRO in this case because, in the course of their continuing settlement discussions, IRI has agreed to maintain the status quo for the time being. IRI will not seek to have the website taken down.  *Id.* ¶ 2.  Even before Eller filed his motion, there was no imminent likelihood that the www.dateamormon.com website would be terminated. While IRI requested that the website host remove infringing content from the site, the host refused to comply with this demand.  *Id.* ¶ 3.  Moreover, this dispute could be resolved and the site can

1

continue operating if Eller merely ceases using MORMON as a trademark or service mark and ceases imitating IRI's federally registered Temple Design Marks.

The word MORMON is a valid trademark used to identify and distinguish goods and services that emanate from The Church of Jesus Christ of Latter-day Saints (the "Church").  Like many trademarks, it may also be used fairly and in good faith to describe Church members.  IRI has no objection to Eller's operation of a dating website that contains non-trademark references to the term "Mormon."  For example, Eller could use descriptive language on his site such as "this is a website intended for Mormons."  However, Eller is not using MORMON MATCH to describe anything.  Rather he is using it as a mark to identify and distinguish his services from those of others in a manner that competes in part with services offered by the Church.

### C.   The Co-Pending TTAB Proceeding

Eller has applied to register MORMON MATCH as a trademark, and the parties are currently involved in a trademark opposition proceeding, pending before the Trademark Trial and Appeal Board ("TTAB") in the United States Patent and Trademark Office ("PTO"), that raises many of the same issues raised in Eller's Complaint.  *Id.* ¶ 4.  The opposition was instituted on February 24, 2014, after IRI timely[1] filed a notice of opposition to Eller's "intent to use" application to register MORMON MATCH.  *Id.* ¶ 5, Ex. A.

### D.   Intellectual Reserve, Inc. and the Church

IRI is a non-profit corporation based in Salt Lake City, Utah, which owns and manages intellectual property used by the Church.  *Id.* ¶ 6.  IRI holds title to the Church's trademarks and

---

[1] On June 3, 2013, Plaintiff filed application Serial No. 85/949,670 for registration of the alleged mark "MORMON MATCH (and Design)."  That application was published in the Official Gazette on October 29, 2013 for "Internet-based dating, social introduction and social networking services."  After obtaining a 90 day Extension of Time to Oppose, IRI filed its opposition on February 24, 2014, pursuant to 15 U.S.C. § 1063.

other intellectual property. *Id.* ¶ 7.  (Hereinafter IRI and the Church will be collectively referred to as the "Church").

The Church is commonly referred to in the United States and throughout the world as the "Mormon Church," and it uses MORMON alone and with other words as a trademark and service mark to identify and distinguish its goods and services from those offered by others. *Id.* ¶ 8.  The Church's trademarks and service marks comprise a family of marks containing the word MORMON (the "MORMON Marks").  The Church also owns registered design marks showing depictions of the Church's Salt Lake City temple (the "Temple Design Marks") *Id.* ¶ 9.

**E.**     **The Church's Federally Registered MORMON Marks**

Long prior to the acts complained of herein, the Church began using and established common law rights in a number of MORMON Marks and Temple Design Marks, which have been used extensively in connection with a variety of goods. *Id.* ¶ 10.  Among other things, the Church offers counsel and advice on dating and social networking services closely related to those Eller plans to offer under the MORMON MATCH mark. *Id.* ¶ 11.

The PTO and the State of Utah have recognized the Church's ownership of and exclusive right to use many of the MORMON Marks by issuing the following registrations, copies of which are submitted herewith. *Id.* ¶ 12, Ex. B.

(1)     Registration No. 3715744, **MORMON.ORG**, issued November 24, 2009 for providing information and instruction in the fields of religion, ethics, and moral and religious values; providing on-line religious instruction promoting family values; providing information in the field of parenting concerning education and entertainment of children; **and providing courses of instruction in the field of marital relations** (emphasis added);

(2)     Registration No. 3239919, **MORMON**, issued May 8, 2007, for educational and genealogical services;

(3)     Registration No. 2883572, **BOOK OF MORMON**, issued September 14, 2004, for recordings, printed matter;

3

(4)     Registration No. 1524555, **MORMON HANDICRAFT**, issued February 14, 1989, for fabrics, linens, bats, towels, dish cloths, pillowcases, afghans, lap robes, quilts, quilt kits, and wall hangings, table covers, soft gifts, and hem-stitched items of textile material;

(5)     Registration No. 1527447, **MORMON HANDICRAFT**, issued February 28, 1989, for retail catalog mail order and telephone order services for craft items and materials, dolls, baby clothes, toys, young girls' clothing, quilts, personal gifts, needlework, porcelain statues and the like;

(6)     Registration No. 2766231, **MORMON TABERNACLE CHOIR**, issued September 23, 2003, for recordings, live entertainment services, and related goods and services;

(7)     Registration No. 2913694, **MORMON TABERNACLE CHOIR and Design**, issued December 21, 2004, for recordings, publications, live performances, and related goods and services;

(8)     Registration No. 2552030, for the Temple Design Mark, issued March 26, 2002, for printed instructional manuals featuring religious subject matter;

(9)     Registration No. 4323142, for the Temple Design Mark, issued April 23, 2013 for video recordings featuring religious subject matter; and

(10)    Utah Registration No. 5160149-0190, **THE MORMON CHURCH**, issued July 18, 2002.

Through many years of extensive use and publicity, the MORMON Marks have become well known and famous among members of the public in Texas and throughout the United States as distinctive indicators of the source of goods and services offered by the Church. *Id.* ¶ 13, Ex. C.  The marks have been widely publicized through radio, television and print media. *Id.* ¶ 14. For example, the Church has disseminated a number of television advertisements directed at promoting parenting skills and family values, many of which are viewable on www.YouTube.com, www.mormonchannel.org, and other websites. *Id.* ¶ 15, Ex. D.  It has also

4

disseminated a series of informative commercials entitled "I'm a Mormon," many of which are visible on www.mormonchannel.org/Im-a-mormon.  *Id.* ¶ 16, Ex. E.

The Church has used the mark MORMON TABERNACLE CHOIR with a continuing series of weekly radio broadcasts since 1929 under the mark MUSIC AND THE SPOKEN WORD.  *Id.* ¶ 17.  Those weekly programs are carried on over 2,000 radio, television and cable networks, and it is the world's longest continuous radio broadcast.  *Id*. ¶ 18.  This 360-member chorus of volunteer men and women has performed at World's Fairs and expositions, at inaugurations of U.S. presidents, and throughout the United States and abroad.  *Id.* ¶ 19.

The registrations do not cover all goods and services offered by the Church.  And the Church owns a number of unregistered common law MORMON Marks, including "MORMON CHANNEL," "MORMON NEWSROOM," and "MORMON TIMES."  *Id.* ¶ 20, Exs. F, G.

### F.     The Church's Social Networking and Dating Related Services

The Church has established moral standards and guidelines for dating and offers counseling services to help individuals find marriage partners.  *Id.* ¶ 21.  The goal of worthy members of the Church is to be married in one of the Church's many temples.  *Id.* ¶ 22.  The Church often uses photographs of the Salt Lake Temple and other temples with its materials on dating.  *Id.* ¶ 23.  For example, at https://www.lds.org/youth/for-the-strength-of-youth/dating?lang=eng the Church has posted dating guidelines along with the temple image shown below.  *Id.* ¶ 24, Ex. H; *see also id.* ¶ 20, Ex. G.



Since long before Eller decided to begin offering social networking and dating services under the mark MORMON MATCH, the Church has been offering a type of social networking services under its MORMON.ORG mark.  *Id.* ¶ 25.  Church members may post a profile of themselves and may find people having similar interests at http://www.mormon.org/create.  *Id.* ¶ 26, Ex. I.

**G.      Eller's Unauthorized Commercial Use of the MORMON Marks**.

Eller is attempting to trade on the Church's reputation and goodwill by using MORMON MATCH as the trademark for his internet dating service.  Although he has not yet begun offering dating services, he is advertising those services under the mark MORMON MATCH at the www.dateamormon.com site, which is linked to the domain name "Mormon-Match.com".[2]   *Id.* ¶ 27, Ex. J.  The website's home page prominently displays the mark MORMON MATCH, the only word mark on the page.  *Id.* ¶ 28.  The word MORMON is the first word in the mark and is in a different color than the word MATCH.  *Id.* ¶ 29.  The site also prominently displays an imitation



of the Church's Temple Design Marks.

*Id.* ¶ 29.

---

[2] Eller does not own the domain name MormonMatch.com and, unlike Eller, the owner of that domain name has not attempted to register MORMON MATCH as a trademark or service mark.

In the declaration attached to his application to register MORMON MATCH as a trademark, Eller admitted that he intends to use the term MORMON as part of a service mark to identify and distinguish his services from those of others by claiming "no other firm, corporation or association has the right to use the mark." *Id.* ¶ 30, Ex. K at 5.  The Church objects to Eller's trademark use of MORMON MATCH because it has already created the false impression that his services are connected with, endorsed or sponsored by, or otherwise affiliated with the Church. *Id.* ¶ 31.  Although Eller claims to be a "Mormon," he never secured the Church's permission to use or register the mark MORMON or the domain names "mormon-match.com" or "dateamormon.com."  *Id.* ¶ 32.

The Church has no objection to Eller's operation of a dating service or to Eller's fair use of the term "Mormon" to refer to members of the Church (e.g. "an online dating service for Mormons").  *Id.* ¶ 33.  In fact, there are several other dating websites that provide dating services to members of the Church.  Some of these use the term "Mormon" in a descriptive manner. However, unlike Eller, none of them have attempted to use or claim rights in the word "MORMON" as a trademark and none have attacked the validity of the Church's marks.  *Id.* ¶ 34. The Church does object to Eller's unauthorized commercial use of MORMON MATCH as a trademark, service mark, trade name or domain name.

**H.     Eller's Unauthorized Application to Register the Mark MORMON MATCH**

Eller filed Application Serial Number 85/949670, for the mark  less than a year ago, on June 3, 2013.  *Id.* ¶ 35.  The application alleges that Eller intends to use the mark on "internet-based dating, social introduction and social networking services."  In his application, Eller declared under penalty of perjury that **"no other person, firm, corporation, or association has the right to use the mark in commerce**."  *Id.* ¶ 36.

In his Complaint and Motion for Temporary Restraining Order, Eller contradicts his prior declaration by asserting that MORMON MATCH is descriptive or generic.  Moreover, Eller is clearly using MORMON MATCH as a service mark by displaying it as the most prominent feature and source identifier on the site.

Eller alleges that he has disclaimed the exclusive right to use the words, "MORMON MATCH."  However, in his PTO application he only disclaimed rights apart from the mark as shown.  Moreover, if Eller obtains a registration for MORMON MATCH even with a disclaimer, he may at some point seek a registration without a disclaimer pursuant to 15 U.S.C. § 1052(f).

The application's Examiner made no written finding that the words MORMON MATCH are generic or descriptive.  And Eller's website does not state that MORMON MATCH is descriptive or generic.  *Id.* ¶ 37.  If it did, any third party would be free to use those words on competing websites.  Eller would not have filed this lawsuit unless he intended to use and claim rights in MORMON MATCH as a service mark.

    **I.**       **Facts Relating to the Likelihood of Confusion**

        **1.**       **Eller's Prior Knowledge of the Church's Prior Registered MORMON Marks**

IRI's federal registrations for the MORMON Marks and the Temple Design Mark were a matter of public record in the PTO for many years prior to Eller's application.  *Id.* ¶ 38.  Eller had constructive notice of the Church's MORMON Marks before he applied to register MORMON MATCH.  *See* 15 U.S.C. § 1072.  If Eller conducted a search of the PTO's online records before adopting his alleged mark, he had actual knowledge the Church's registered MORMON Marks and the Church's prior success in opposing applications containing the word MORMON listed below:

- *Intellectual Reserve, Inc. v. Sheets,* Opposition No. 91191016, for the mark SECRET MORMON, sustained on January 17, 2012;

- *Intellectual Reserve, Inc. et al. v. Harnett,* Opposition No. 91186284, for the mark MORMON CHICKS RULE, sustained on March 3, 2009; and

- *Intellectual Reserve, Inc. v. Book of Mormon Broadway Ltd.* IRI filed an extension of time to oppose Application No. 76714295, for the mark THE BOOK OF MORMON & Design. That application was abandoned on February 10, 2014 as result of the threatened opposition.

*Id.* ¶ 39, Ex. L.

### 2.    The Similarity Between the Parties' Marks

The word MORMON is the first word and most dominant feature in Eller's alleged mark.

*Id.* ¶ 40.  Because the Church owns registrations for MORMON in combination with other words, people viewing Eller's site are likely to believe that his services are approved or endorsed by the Church.  *Id.*  The likelihood of confusion is enhanced by Eller's unauthorized use of the Salt Lake Temple photograph, which imitates the federally registered Temple Design Mark.  *Id.* ¶ 41. Anyone seeing the word MORMON combined with the photograph will inevitably be misled into believing that Eller's services are approved, sponsored or endorsed by the Church.

### 3.    The Similarity Between the Parties' Services

The Church's mark MORMON.ORG is registered for various services including many that are closely related to those listed in Eller's application, *e.g.*, "**promoting family values** . . . **and providing courses of instruction in the field of marital relations.**"  *Id.* ¶ 42.  The subject of dating falls within the scope of the instructional services provided by the Church on marital relations.  *Id*. ¶ 43.  While the Church does not offer a "dating service" per se, it offers dating guidelines and counseling services on dating and closely related subjects.  *Id.*  In addition, the Church provides social networking services under its MORMON.ORG mark through its website at http://www.mormon.org/people/find.  *Id*.¶ 44, Ex. M.  The site allows users to select profiles of people by age, gender, location, name, ethnicity, previous religion and other keywords.  Users also

9

may post photographs, profiles and contact information.  *See*

http://www.mormon.org/me/C4TX/Rosay.

### 4.  The Similarity in Prospective Customers

The potential customers to whom Eller intends to sell his service are members of the

Church.  *Id.* ¶ 45.  Thus, there is direct overlap between those who obtain services under the

Church's MORMON Marks and the intended targets of the services Eller offers under the

infringing mark MORMON MATCH.  *Id.*

### 5.  The Similarity in Trade Channels

Both parties display their marks on and disseminate their services through websites.  *Id.* ¶

46.  Thus, Eller's trade channels are identical to those in which IRI's marks are used.

### 6.  Eller's Intent to Cause Confusion and Injure the Church

While Eller professes to be a Church member, he is deliberately using a counterfeit

imitation of the MORMON Marks on his website, despite objections communicated by counsel on

behalf of Church.  *Id.* ¶ 47.  Eller is pursuing his own financial interests at the expense of the

Church.  *Id.* ¶ 48.  Eller's attack on the validity of the Church's federally registered MORMON

Marks damages the Church and the goodwill symbolized by those marks.  *Id.* ¶ 49.

### 7.  The High Risk of Damage to IRI Posed by Eller's Uncontrolled Use of a Counterfeit MORMON Mark

Because Eller has not obtained a license from the Church, his use of MORMON MATCH

will not be subject to quality control.  *Id.* ¶ 50.  Individuals who find deficiencies in or who are

dissatisfied with Eller, his services or his site's content may develop feelings of ill will that will

injure the goodwill symbolized by the Church's family of registered MORMON Marks.  *Id.* ¶ 51.

### 8.   Eller Will Not Be Damaged If He is Required to Adopt a New Trademark that Does Not Contain the Word "MORMON."

Eller has not yet begun offering dating services under the mark MORMON MATCH.  *Id*. ¶ 52.  However, he is already providing social networking services and has begun to solicit customers.  *Id*. ¶ 53.  At this moment, there is no indication that Eller has an established business, or a single customer.  *Id*. ¶ 54.  Similarly, he apparently has no office or signage, and changing to a new name would impose no hardship on Eller.

There are an infinite number of ways for Eller to offer a dating service directed at Mormons, without using a trademark, service mark or trade name containing the word MORMON.  For example, a dating service for Jews uses the mark JDATE with a number of descriptive phrases like "Meet Jewish Singles."  *Id*. ¶ 55, Ex. N.  Eller could use MMATCH and similar descriptive phrases like "our site will help you meet Mormon singles."  *Id.* ¶ 56.

## II.   APPLICABLE LEGAL STANDARDS

Temporary injunctions are an exceptional type of relief.  It is well established that a preliminary injunction may be granted only if the plaintiff establishes four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest.  *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003).  To satisfy the burden of proof, Plaintiffs must ***clearly establish*** each of the four elements.  *See Kern River Gas Transmission Co. v. Coastal Corp.*, 899 F.2d 1458, 1462 (5th Cir. 1990).  Failure to make an adequate showing on one element is fatal to the motion.  Here, Plaintiff cannot meet his burden on even *one* of the four elements.

### III.   ARGUMENT

**A.   Plaintiff Cannot "Clearly Establish" that He is Likely to Prevail on the Merits.**

To establish entitlement to injunctive relief, Eller must "clearly establish" a negative: that his use of the mark MORMON MATCH is not infringing, *i.e.*, that the Church does *not* have protectable trademark rights in "MORMON" and that his proposed use of MORMON MATCH is *not* likely to cause confusion.  Eller's burden is exceptionally high, and he fails to meet it.

### 1.   Eller Has Not and Cannot Rebut the Church's Rights in its Well Known Family of Registered MORMON Marks.

#### a.   The Church Enjoys Strong Trademark Rights in MORMON.

As shown above, the PTO has recognized the Church's exclusive rights in a family of marks including the word MORMON alone and in combination with other words.  All of these registrations are valid and subsisting, provide nationwide constructive notice of the Church's claim of ownership in marks containing the word MORMON, and are prima facie evidence of the Church's ownership of and exclusive right to use the MORMON Marks in commerce.  Furthermore, Registration Numbers 1524555, 1527447, 2552030, 2766231, 2883572, 2913694, and 3239919 are more than five years old, incontestable, Taggart Decl. ¶ 12, and **conclusive** evidence of the Church's ownership and exclusive right to use the marks.  *See* Section I.E, *supra.*

#### b.   Eller Has Mischaracterized the PTO's Position with Regard to the MORMON Marks.

Although it is indisputable that the PTO has recognized the Church's ownership of the MORMON Marks, Eller has disingenuously cited a Trademark Examiner's rejection of the Church's Application Serial Number 78/161091, seeking to register the mark MORMON for religious services, on the grounds that it was allegedly "descriptive" or "generic."

This occurred over ten years ago in connection with the Church's application.  Although the Church did not appeal this refusal and the application was abandoned, this has no relevance to

the facts at issue in this case.  The Church has obtained numerous other registrations of its

MORMON Marks, for religious goods and services, both before and after that instance.  Eller is

seeking to use and register MORMON for a commercial venture involving services directly

related to those covered by the Church's registered MORMON.ORG mark. Moreover, opinions

expressed at the lowest level of the Patent and Trademark Office by an examiner have no

precedential value.  *See* Trademark Manual of Examining Procedure ("TMEP") § 1203.01 (2013)

("[A]n earlier [PTO] decision is insufficient to warrant the same finding in a future case"); TMEP

§ 1216.01 ("Trademark rights are not static, and eligibility for registration must be determined on

the basis of the facts and evidence of record that exist at the time registration is sought."); *In re*

*Loew's Theatres, Inc.,* 769 F.2d 764, 769 (Fed. Cir. 1985) (noting that "each application for

registration of a mark for particular goods must be separately evaluated"). Such opinions are often

tentative and are often changed.

    The Church actually obtained Registration Number 3239919 for the mark MORMON for

some of the services listed in application Serial Number 78/161091, *i.e.*, educational services

including conferences in the field of religion.  Because the Church offers educational services

relating to dating, Eller's services are closely related to those offered by the Church under its

MORMON Marks.  The Church's registration for the mark MORMON is now incontestable and is

conclusive evidence of the Church's ownership and exclusive right to use the mark MORMON.

*See* 15 U.S.C. § 1115(b).  Eller does not address this fact in his motion for temporary restraining

order.

    Eller also alleges that a trademark examiner *initially* refused registration of the mark in the

Church's application Serial Number 77/179068 for "MORMON.ORG" on descriptiveness

grounds.  Again, he fails to disclose that the Church overcame the refusal and now owns

registration for MORMON.ORG.

13

## 2.    Eller's Use of MORMON MATCH Is Likely to Cause Confusion.

Eller has failed to meet his burden to show that his use of the mark "MORMON MATCH"

is *not* likely to cause confusion.  In determining whether a likelihood of confusion exists, courts in

the Fifth Circuit consider the following nonexhaustive list of factors:  (1) the type of trademark

allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or

services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising

media used, (6) the defendant's intent, and (7) any evidence of actual confusion.  *Roto-Rooter*

*Corp. v. O'Neal*, 513 F.2d 44, 45 (5th Cir. 1975).  Applying these factors to MORMON MATCH

demonstrates that Eller's mark is likely to cause confusion.

The first factor, "type of trademark," refers to the strength of the senior mark.  *Elvis*

*Presley Enters., Inc. v. Capece*, 141 F.3d 188, 201 (5th Cir. 1998).  Stronger marks are entitled to

greater protection.  *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259 (5th Cir. 1980).

Here, the PTO has concluded that the MORMON Marks are inherently distinctive with regard to

some goods and services and they have acquired distinctiveness as to others.  Moreover, because

IRI owns a family of marks containing the word MORMON, the marks are entitled to broader

protection than a single mark.  *See J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460,

1462 (Fed. Cir. 1991).

As shown in Registration No. 3239919, the mark MORMON has been in use since at least

as early as 1833.  Millions of products bearing the MORMON Marks have been sold or distributed

in the United States and millions have visited the Church's websites and seen or heard the

MORMON Marks on television or in radio broadcasts and on printed materials.  The Marks'

strength is further evidenced by the Church's successful oppositions to other applications for

marks containing the word MORMON filed by others who, like Eller, have tried to use the mark

14

for commercial purposes.[3]  These facts demonstrate that the MORMON Marks are strong and deserving of protection against junior users like Eller, who deliberately attempt to cause confusion.

Similarity of the marks, the second factor, "is determined by comparing the marks' appearance, sound, and meaning," *Elvis Presley Enters.*, 141 F.3d at 201, with emphasis on the "total effect rather than individual features." *Quantum Fitness Corp. v. Quantum LifeStyle Ctrs., LLC*, 83 F. Supp. 2d 810, 822 (S.D. Tex. 1999) (citation omitted).  Here, MORMON MATCH is sufficiently similar to the MORMON Marks to cause likelihood of confusion.  "MORMON" is the dominant portion of MORMON MATCH, *i.e.*, the word MORMON is what people see and remember when looking at Eller's webpage, thus making the mark virtually identical.  *Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056, 1065 (3d Cir. 1991) (when dominant portion of two marks is same, "confusion is likely."), *cited by Quantum*, 83 F. Supp. 2d at 823.  *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988) (identical dominant lead word in each entity's name, "can foster confusion."). [4]

Third, MORMON MATCH will be used on services similar to those offered by the Church under the MORMON Marks.  Eller's MORMON MATCH services, internet-based dating, social

---

[3] The MORMON Marks' history of success at the PTO definitively rebuts Eller's unfounded claim that "'Mormon' has so transcended its identifying purpose that the Church cannot claim infringement as a matter of law."  In fact, the MORMON Marks' registrations are evidence that their marks are protectable.  *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010) ("Registration of a [trade]mark with the PTO constitutes prima facie evidence [under the Lanham Act] of the mark's validity and the registrant's exclusive right to use the registered mark in commerce with respect to the specified goods or services."); *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 10 (5th Cir. 1974) ("registration is prima facie evidence of the registrant's ownership of the mark and of the registrant's exclusive right to use the mark in commerce in connection with the services specified in the registration certificate").

[4] As set forth below, the fact that Eller's registration "disclaims" the words MORMON and MATCH is irrelevant to the likelihood of confusion analysis.  *See* Section 3 below.

15

introduction, and social networking, overlap with services offered by the Church, including but not limited to "courses of instruction in the field of marital relations," listed in the Church's MORMON.ORG registration.[5]  "The greater the similarity between products and services, the greater the likelihood of confusion."  *Elvis Presley Enters.*, 141 F.3d at 202.  The services of MORMON MATCH (dating and social introduction) are also complementary with those offered under the MORMON Marks such as marital relations instruction and the social interaction features provided as part of the MORMON.ORG services.  "Complementary products have been held particularly susceptible to confusion."  *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha,* 754 F.2d 591, 598 (5th Cir. 1985).

Regarding the fourth factor, Eller's MORMON MATCH services are to be sold in the same channels of trade, most notably the Internet, and are offered to the same potential customers—Church members.   As to the fifth factor, Eller's use of the Internet websites as advertising media overlaps with the media used by the Church for its social networking and other dating-related services offered under the MORMON.ORG mark.

Regarding defendant's intent, the sixth factor, there is no doubt that Eller chose the mark MORMON MATCH and an imitation of the Church's registered Temple Design marks to trade on the goodwill associated with the MORMON Marks.  "[T]he intent of defendants in adopting (their mark) is a critical factor, since if the mark was adopted with the intent of deriving benefit from the

---

[5] By virtue of the MORMON Marks' federal registrations, the Church's exclusionary rights are not limited to the goods and services specified in the registration, but go to any goods or services on which the use of the mark is likely to cause confusion.  *Pure Foods v. Minute Maid Corp.*, 214 F.2d 792, 796 (5th Cir. 1954) ("The remedies of an owner of a registered trade-mark … extend to any goods on which the use of an infringing mark 'is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods.'") (quoting 15 U.S.C. §1114(1)); *Cont'l Motors Corp. v. Cont'l Aviation Corp.*, 375 F.2d 857, 861 (5th Cir. 1967) ("The remedies of the owner of a registered trademark are not limited to the goods specified in the certificate, but extend to any goods on which the use of an infringing mark is 'likely to cause confusion …' Confusion … not competition, is the real test of trademark infringement.").

reputation of (the plaintiff,) that fact alone may be sufficient to justify the inference that there is confusing similarity." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 332 (5th Cir. 2008) (citation omitted).

The seventh factor also weighs heavily against Eller's claim that his unauthorized use of MORMON will not cause confusion. Despite the fact that Eller has not yet launched his dating services, there is already evidence of actual confusion as to affiliation between his MORMON MATCH service and the Church. The following comments appeared on the current version of the MORMON MATCH website www.dateamormon.com as of April 28, 2014:

- "We are in the LDS church ... you know the one that is meant to seal you for time and all eternity. That should be the goal of an [sic] so-called LDS site. I'm glad that this truly seems like it will be run by someone who is actually LDS not a company using LDS in the title to earn money off of us."

- "Hello, I am new to this site. I have read a lot of comments and I am happily getting the impression that is a lag it [legit] LDS site. :)"

- "This is a site you can trust. If you are having problem finding that right person or you have suffered lots of turn downs, here is the answer to all suck [sic] kinds of problems. This is purely **Latter Day Saints**. You can be sure of having that desired person in your life."

- "While I like that this is LDS operated, the same basic pool of people are the target. …"

- "I am far from perfect & I am afraid that being on a Mormon site will have men scanning for the 'perfect Mormon wife.'"

- Please have them put in there MEMBERSHIP NUMBER SO THEY CAN JOIN, WITHOUT IT PLEASE DONT ALLOW ANYONE TO JOIN. I pay on cite related to members and encounter with lots of so call MORMONS. That just my take for this site."

- "…I think there should be away that non-member (non-LDS) can't get access to this whole site. once again, this is really great and it should be for only Mormons."

- "There should be a feature where you could put your Membership Record Number so that you can really tract [track] if they are really LDS or not."

- "I think a great feature would be to have a church member confirmation like putting in the member ID you get when you are baptized and confirmed. This I think will put trust into

knowing who I am looking at or talking to is a confirmed member and not a non member signing up on every site they can think of with bad intentions…"

- "I think you have to come up with some way to be sure that the people on the site are truly LDS. I don't know of anything except a membership number…"

(Taggart Decl. ¶ 57, Ex. O).

Thus, all of the Fifth Circuit's confusion factors weigh in favor of a finding that Eller's use of MORMON MATCH is likely to cause confusion, and to falsely suggest a connection with the Church or its beliefs, thereby diluting the distinctive quality of the Church's MORMON marks. *See CICCorp., Inc. v. AIMTech Corp.,* 32 F. Supp. 2d 425, 438 (S.D. Tex. 1998) ("Fifth Circuit precedent is clear that *even a minority* of [factors] favoring a finding of likelihood of confusion will suffice.") (emphasis added).

The cases cited by Eller do not support his contention that his use of MORMON MATCH will not cause confusion.  For example, in *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Kinship, Int'l, Inc.*, No. CV 87-8113 MRP, 1991 WL 11000345 (C.D. Cal. Oct. 7, 1991), the court rejected the defendant's allegation that it was entitled to rely on the fair use defense.  Ultimately, the court declined to find infringement but only because defendants were using the name to identify themselves as gay and lesbian Seventh Day Adventists.  Unlike Eller, defendants in that case had not applied to register their name as a trademark for a dating service or for any type of service.  Similarly, unlike Eller, they had not declared under penalty of perjury to the Patent and Trademark Office that no other person or entity had the right to use their name.

**3.      Eller's "Affirmative Defenses" Are Invalid.**

> **a.      Eller's Disclaimer of the Words "Mormon" and "Match" Does Not Defeat Likelihood of Confusion and May Promote Confusion.**

After filing his application to register MORMON MATCH, Eller voluntarily entered a disclaimer of exclusive rights in the words "Mormon" and "Match" apart from the mark as shown

in the application.  He suggests, without any supporting authority, that these disclaimers (which the public never sees) are evidence that MORMON MATCH will not cause confusion.  Eller's claim is unfounded because the entry of disclaimers in a PTO application is not relevant to the likelihood of confusion analysis.  Eller's disclaimer of the words "Mormon" and "Match" does not "cure"—or otherwise impact—likelihood of confusion.  *In re Nat'l Data Corp.*, 753 F.2d 1056, 1059 (Fed. Cir. 1985) ("[A] disclaimer in [an] application to register [a] mark has no legal effect on the issue of likelihood of confusion.  The public is unaware of what words have been disclaimed during prosecution of the trademark …."); *see also* 3 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 19:72 (4th ed. 1998) ("For purposes of determining the likelihood of confusion concerning a registered composite mark of which portions [have been] disclaimed, the disclaimed matter cannot be ignored.") (hereinafter "McCarthy").

Even if MORMON MATCH was descriptive, it would have the potential to acquire secondary meaning and qualify for registration without a disclaimer under 15 U.S.C. § 1052(f).  *See Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 691 (5th Cir. 1992) (holding that 1930 state court decision that "pig sandwich" did not have secondary meaning did not bar a claim in 1990 that the mark had attained secondary meaning: "While 'pig sandwich' may not have had a secondary meaning in 1930 … the jury finding to the contrary sixty years later affirms that a factual change has perhaps altered the basis upon which *Dixiepig* depended.").[6]  Any such result would dilute the Church's rights in the MORMON marks.

---

[6] *See also Cont'l Motors Corp.*, 375 F.2d at 862 (held erroneous for trial judge to rely on earlier decision denying trademark protection to "continental" as geographic term where "economic fact[s]" had changed and remanded for further consideration of whether term had acquired secondary meaning).

19

**b.**      **"Mormon Match" is Not A Generic Term.**

A generic term refers to the class of which a good or service is a member.  *Two Pesos, Inc.*

*v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  MORMON MATCH is not a generic term

because it does not refer to any class of services.  Online social networking and dating services are

not generically referred to as Mormon Match.  As used by Eller, MORMON and MATCH

together form a unitary mark, not a generic term.  *See Ass'n of Co-op Members, Inc. v. Farmland*

*Indus., Inc.*, 684 F.2d 1134, 1140 (5th Cir. 1982) (unprotectable words "may, when used in

combination, become a valid trademark").

**c.**      **Eller Has Not Used the Mark MORMON MATCH in Good Faith.**

Eller has further alleged that his use of MORMON was in good faith, preventing a finding

of infringement.  As an initial matter, good faith is not a defense to trademark infringement.  *Fuji*

*Photo Film Co.,* 754 F.2d at 596 ("The reason for this is clear: if potential purchasers are

confused, no amount of good faith can make them less so.  Bad faith … may, without more, prove

infringement."), *citing Amstar Corp.,* 615 F.2d at 263 (finding that trial court erred in basing "no

confusion" determination on fact that trademark use was in good faith).

Contrary to his representations Eller adopted MORMON MATCH in bad faith for his own

commercial gain and with a willful intent to deceive customers into believing he has the approval

of the Church.  First, the federal registrations of the MORMON Marks put Eller on constructive

notice of the Mormon Marks, and he undoubtedly had actual knowledge of the Church's rights

because the registrations are a matter of public record.  Knowledge of marks is a factor that weighs

against a finding of good faith.  While "good faith" is not well-defined in the trademark

infringement case law, it has been held that an inference of a lack of good faith may be drawn

from defendant's use of a mark with "the intent to 'trade upon and dilute the good will'

represented by the plaintiff's mark."  *DowBrands, L.P. v. Helene Curtis, Inc.*, 863 F. Supp. 963,

970 (D. Minn. 1994), *citing* McCarthy § 11.17.  Moreover, an alleged infringer's knowledge also gives rise to an inference of bad faith.  *See id.*

Eller's reliance on *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786 (5th Cir. 1983) to argue fair use is misplaced.  That case was expressly abrogated by the Supreme Court in *KP Permanent Makeup, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 121 (2004) (holding that, contrary to Fifth Circuit's ruling in *Zatarains*, "some possibility of consumer confusion must be compatible with fair use").

### d.    Eller's Use of "Mormon" Is Not Fair Use.

"Fair use" is typically an affirmative defense asserted by a trademark infringement defendant.  It arises where the allegedly infringing term is used "in good faith to describe [a defendant's] goods or services, but only in actions involving descriptive terms and only when the term is used in its descriptive sense rather than in its trademark sense."  *See Sugar Busters LLC v. Brennan*, 177 F.3d 258, 270-71 (5th Cir. 1999); *see also* 15 U.S.C. § 1115(b)(4).  A fair use defense is established if a defendant proves that its use is "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith."  *Compliance Review Servs., Inc. v. Callista Davis-Osuawu*, C.A. No. H-04-3635, 2006 WL 2385291 at *5 (S.D. Tex. Aug. 17, 2006), *citing Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 2006 WL 1982685, at *3 (11th Cir. July 8, 2006) (quoting *EMI Catalogue P'ship v. Hill*, *Holliday, Connors, & Cosmopulos, Inc.*, 228 F.3d 56, 64 (2d Cir. 2000)).  *See also Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir. 1980).  Eller fails each element of this test.  *See* Sections I.G, I.H, III.A.3.c, *supra*.

Eller is using MORMON MATCH and an imitation of the Temple Design as trademarks and service marks to distinguish his service from those of others.  Thus, his use is not fair use.

### B.     Eller Will Not Suffer Irreparable Injury If His Motion is Denied.

As the moving party, Eller bears a heavy burden of establishing that he will suffer irreparable harm absent an injunction.  *Watchguard Techs., Inc. v. Valentine*, 433 F. Supp. 2d 792, 794 (N.D. Tex. 2006), *citing Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).  "Irreparable harm requires a showing that: (1) the harm to Plaintiff is imminent; (2) the injury would be irreparable; and (3) that Plaintiff has no other adequate legal remedy."  *Gonannies, Inc. v. Goaupair.com, Inc.*, 464 F. Supp. 2d 603, 608 (N.D. Tex. 2006), *citing Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975)).  As the Fifth Circuit has observed, "it is not so much the magnitude but the *irreparability* [of the threatened harm] that counts for purposes of a preliminary injunction."  *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (citation omitted) (quoting *Enter. Int'l, Inc.,* 762 F.2d at 472), *cert. denied*, 133 S. Ct. 2396 (2013).

An injury is not irreparable if it can be adequately remedied by money damages.  *Id.* ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [an injunction], are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, [weighs] heavily against a claim of irreparable harm.") (quoting *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975)); *see also DFW Metro Line Servs. v. Sw. Bell Tel. Co.*, 901 F.2d 1267, 1269 (5th Cir. 1990) (per curiam) ("There can be no irreparable injury where money damages would adequately compensate a plaintiff."); *Keane v. Fox Tel. Stations, Inc*., Civ. No. H-03-1642, 2003 WL 22331255, at *2 (S.D. Tex. May 16, 2003) (denying plaintiff's ex parte TRO motion in part based on plaintiff's inability to show damages insufficient to compensate plaintiff if he were to prevail).

Eller will not be irreparably injured if the Court denies his request for a temporary restraining order.  Eller has not yet begun providing services and will suffer no harm even if he is

precluded from doing so under the mark MORMON MATCH during the pendency of this proceeding.  Indeed, www.dateamormon.com currently has no customers and generates no revenue because the website is not yet providing dating services.

In addition, denial of immediate injunctive relief will not preclude Eller from offering online dating services to members of the Church under a non-infringing name, something he could have elected to do from the start.  Eller complains that changing the name of his dating service will destroy the customer goodwill and business reputation he has developed over two years of promoting "Mormon Match."  *Pltf's First Memo. of Law in Support of Mot. for Temporary Restraining Order*, ECF No. 10 at 11.  These threatened injuries are not irreparable.  Eller cannot claim "total loss" of a business that has been in development for a short time period and that has not begun offering any dating services.  The Fifth Circuit has recognized that "lost goodwill of a business operated over a short period of time is usually compensable in money damages."  *DFW Metro Line Servs.*, 901 F.2d at 1269 n.7 (loss of customer goodwill not irreparable where DFW Metro had only been in business for one and a half years at the time suit was filed).[7]  In addition, Eller offers no evidence, other than conclusory statements contained in affidavits, to show that he will be unable to market online dating services to members of the Church under a different, non-infringing name.  *See White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) ("Without question, the irreparable harm element must be satisfied by independent proof, or no injunction may issue."); *Enter. Int'l, Inc.,* 762 F.2d at 474 (lower court's finding that plaintiff's reputation and

---

[7] The cases Eller cites in support of his argument that loss of business goodwill constitutes irreparable harm are from other jurisdictions and involve readily distinguishable facts.  In *Medicine Shoppe International, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003), for example, the court found that a franchisor, Medicine Shoppe, would suffer irreparable harm absent an injunction barring a franchisee from de-identifying as a Medicine Shoppe pharmacy where the franchisee had been operating under the Medicine Shoppe name for over 25 years.

goodwill in the marketplace would be irreparably harmed was "speculative" and "without evidentiary support").

In short, Eller will not suffer irreparable harm if the Court denies his motion because his dating service is not yet operational and thus has no customer base and generates no revenue. Any alleged loss of business goodwill that will result from operating the online dating service under a different, non-infringing name is capable of being quantified and may be compensated in money damages. Accordingly, Eller has failed to satisfy his burden of demonstrating irreparable harm, and his request for a temporary restraining order must be denied.

### C.   Eller's Alleged Threatened Injury Does Not Outweigh the Harm that an Injunction Would Cause the Church.

In addition to demonstrating a likelihood of success on the merits and irreparable harm (which he cannot do), Eller must show that the balance of the hardships favors granting injunctive relief. *Dennis Melancon, Inc.*, 703 F.3d at 268. Eller is unable to satisfy this burden because Eller's use of the MORMON MATCH mark is already causing actual confusion and will cause the Church irreparable harm. This harm outweighs any alleged threatened harm to Eller.

Eller's MORMON MATCH mark will cause irreparable injury because the Church has no control over the quality of the services he offers and, therefore, is unable to control its goodwill and reputation, thereby causing the Church irreparable harm. *See* Section I.I.7; *see also Quantum Fitness Corp.,* 83 F.Supp.2d at 831 ("When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury ....").[8] By contrast, Eller's alleged harm is adequately compensated by money

---

[8] *See also Chemlawn Servs. Corp. v. GNC Pumps, Inc.*, 690 F. Supp. 1560, 1569 (S.D. Tex. 1988) ("Likelihood of confusion due to the subsequent use of the confusingly similar mark … causes irreparable harm."), *aff'd*, 856 F.2d 202 (Fed. Cir. 1988); *Am. Rice, Inc.*, 532 F. Supp. at 1389 (loss of control as to quality of infringing competitor's goods constituted "immediate, irreparable harm"); 5 McCarthy § 30:47 (irreparable injury flows from showing of likely confusion).

damages and is not irreparable.  *See Dennis Melancon, Inc.*, 703 F.3d at 279.  Because Eller's

alleged threatened harm is outweighed by the harm an injunction would cause the Church, Eller's

request for temporary injunctive relief should be denied.

> **D.     An Injunction Permitting "MORMON MATCH" to Move Forward as a**
> **Commercial Business Venture Will Disserve the Public Interest.**

Granting Eller's request for injunctive relief will disserve the public, which has a

significant interest in being free from deception or confusion.  *Augusta Nat'l, Inc. v. Exec. Golf*

*Mgmt., Inc.*, 996 F. Supp. 492, 499 (D.S.C. 1998) (public's right "to be free from the deception

that results from [misuse of a] trademark is transcendent");  *Opticians Ass'n of Am. v. Independent*

*Opticians of Am. Eyeglasses*, 920 F.2d 187, 197, 17 U.S.P.Q.2d 111 (3d Cir. 1990) ("Public

interest …in a trademark case … is most often a synonym for the right of the public not to be

deceived or confused.");  *Advantus Capital Mgmt., Inc. v. Aetna, Inc.*, 81 U.S.P.Q.2d 1743, 2006

WL 2916840 at *6 (D. Minn. 2006) ("The public has an interest in protecting intellectual property

and preventing consumer confusion.").  If Eller is permitted to launch business activities under the

mark MORMON MATCH, the public will be deceived and confused into believing that there is a

connection between the Church and his business venture.  *See Quantum Fitness Corp.*, 83 F. Supp.

2d at 832 (noting that "[t]he public interest is always served by requiring compliance with … the

Lanham Act and by enjoining the use of infringing marks" and that protecting a "valid trademark

from infringement by a junior user does not disserve the public interest.").

## CONCLUSION

For all of the reasons stated above, the Church requests that Eller's request for a temporary

restraining order be denied.

Dated:  April 29, 2014

/s/ Robert. M. Schick_____
Robert M. Schick
Attorney-In-Charge
State Bar No. 17745715
Federal Bar No. 587

**SCHICK & COPELAND LLP**
3700 Buffalo Speedway
Suite 960
Houston, TX 77098
Tel: 832.849.1800
Fax: 832.849.1799
rschick@schickcopeland.com

*Attorneys for Defendant Intellectual Reserve, Inc.*

OF COUNSEL
Douglas R. Bush
Michael A. Grow (pro hac vice pending)
**ARENT FOX LLP**
1717 K Street, NW
Washington, DC  20036-5342
Tel: 202.857.6000
Fax: 202.857.6395

**CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2014, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

Siddartha Rao                                    Kiernan McAlpine
121 E. 12th St. Apt LG                          3310 Louisiana St., Suite 2413
New York, New York 10003                        Houston, Texas 77006
Tel: 646-221-1846                               Tel: 832-314-1383
                                                Fax: 832-201-7814

*Attorney for Plaintiff*                         *Attorney for Plaintiff*


                                    _____*/s/ Robert M. Schick*_____
                                         Robert M. Schick