IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JONATHAN ELLER, as partner of the de facto partnership, Mormon Match, | &#124; |
| Plaintiff, | &#124; |
| v. | CIVIL ACTION NO.: 14-CV-00914 |
| INTELLECTUAL RESERVE, INC., a Utah Corporation, holding intellectual property for The Church of Jesus Christ of Latter-day Saints, | &#124; |
| Defendant. | &#124; |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

**NATURE AND STAGE OF THE PROCEEDING** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT** . . . . . . 2

**SUMMARY OF THE ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

    I.   **IRI Does Not Own the Word Mormon** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

    II.  **IRI Has Not Established Trademark Rights for Online Dating** . . . . . . . . . 6

    III. **The Court Should Grant Injunctive Relief** . . . . . . . . . . . . . . . . . . . . . . . . . .9

        A.  **Plaintiff Establishes a Likelihood of Success on the Merits** . . . . . .9

        B.  **Plaintiff Establishes Irreparable Harm Absent Relief** . . . . . . . . . 12

        C.  **The Equities Favor Plaintiff** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        D.  **The Public Interest Favors an Injunction** . . . . . . . . . . . . . . . . . . . 14

    IV. **The Court Should Disregard or Strike
IRI's Accusations and Speculations** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**TABLE OF AUTHORITIES**

**Cases**

*Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4  (2d Cir. 1976) . . . . . . . . . 4

*Aloe Crème Labs. Inc. v. Milsan, Inc.*, 423 F.2d 845, 849 (5th Cir. 1970) . . . . . . . . . . .4, 7

*Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010) . . . . . . . 6

*Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3 (5th Cir. 1974) . . . . . . . 6

*Board of Supervisors for Louisiana State University v.
    Smack Apparel Company*, 550 F.3d 465, 488 (5th Cir.2008) . . . . . . . . . . . . . . . .11

*Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188 (5th Cir. 1998) . . . . . . . . . . . . . . . . . 9

*Exxon Corporation v. Texas Motor
    Exchange of Houston*, 628 F.2d 500 (5th Cir.1980) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Exxon Corp. v. Oxxford Clothes*, Inc., 109 F.3d 1070, 1080 (5th Cir.1997) . . . . . . . . . . 8

*Florida Businessmen v. City of Hollywood*, 648 F.2d 956 (5th Cir.1981) . . . . . . . . . . . .12

*In re Abcor Dev. Corp.,* 588 F.2d 811, 813, 200 USPQ 215, 217 (C.C.P.A. 1978) . . . . . 5

*In re Bed & Breakfast Registry*, 791 F.2d 157, 229 USPQ 818 (Fed. Cir. 1986) . . . . . . . 9

*In re Camel Mfg. Co.*, 222 USPQ 1031 (TTAB 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Planalytics, Inc.*, 70 USPQ2d 1453 (TTAB 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Styleclick.com Inc.*, 58 USPQ2d 1523 (TTAB 2001) . . . . . . . . . . . . . . . . . . . . . . . . 5

*Miss World (U.K.) Ltd. v. Mrs. America Pageants, Inc.*,
    856 F.2d 1445 (9th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*KP Permanent Makeup, Inc. v. Lasting
    Impression I, Inc.*, 543 U.S. 111 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lone Star Steakhouse & Saloon, Inc. v.
    Alpha of Va., Inc.*, 43 F.3d 922 (4th Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*McClure v. Salvation Army*, 460 F.2d 553(5th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . 15

*Nat'l Screen Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647 (5th Cir.1962) . . . . . . 12

*Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166 (5th Cir.1986),
    *cert. denied*, 481 U.S. 1069 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Safer, Inc. v. OMS Investments, Inc.*, 94 USPQ2d 1031 (TTAB 2010) . . . . . . . . . . . . . . .7

*Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir. 1980) . . . . . . . . . . . . . . . . .11

*Sugar Busters LLC v. Brennan*, 177 F.3d 258 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . .11

*Pebble Beach Company v. Tour 18 I Limited*, 155 F.3d 526 (5th Cir.1998) . . . . . . . . . . 11

*Venetianaire Corp. v. A & P Import Co.*, 429 F.2d 1079 (5th Cir. 1970) . . . . . . . . . . . . 11

*Victoria Secrets Brand Management v. Sexy Hair Concepts*,
    2009 WL 955795 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009) . . . . . . . 9

*Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786 (5th Cir. 1983) . . . . . . . .12

**Treatises**

Thomas McCarthy, McCarthy On Trademarks
    And Unfair Competition § 17:8 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Secondary Sources**

Bosker, Bianca, *Hook of Mormon: Inside the Church's
    Online-Only Missionary Army*, THE HUFFINGTON POST (April 14, 2014) . . . . . . .6

Matchar, Emily, *Why I Can't Stop Reading
    Mormon Housewife Blogs*, SALON (Jan. 15, 2011) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mormon.org's Redesign Connects Members and Investigators*,
    THE CHURCH (September 15, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Report to Congress, *Trademark Litigation Tactics and
    Federal Government Services to Protect Trademarks
    and Prevent Counterfeiting* (April 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Riess, Jana, *Who Owns the Name Mormon*,
    RELIGION NEWS SERVICE (April 24, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

## **NATURE AND STAGE OF THE PROCEEDING**

This case is about who owns the word "Mormon." Defendant Intellectual Property, Inc. ("IRI") claimed to completely own "Mormon," and tried to shut down Plaintiff's business for using the word. Plaintiff seeks injunctive and declaratory relief.

Plaintiff is a Mormon. He is also a member of Mormon Match, LLC f/k/a Mormon Match ("Mormon Match"), which he has promoted for over two years. Mormon Match wants to run a Mormon dating website at dateamormon.com (the "Dating Website"). The Dating Website uses the word Mormon to describe its dating services. It also displays a photograph of the Salt Lake Temple, which many Mormons associate with marriages between Mormons. Mormon Match has license rights to the photograph.

IRI tried to shut down the Dating Website. It said that:

1. "The term MORMON and images of the Salt Lake Temple are . . . owned by IRI."

2. "IRI has not given the owners of www.dateamormon.com permission to use the term MORMON or any image of the Salt Lake Temple . . . ."

3. ". . . [U]se of the term MORMON and an image of the Salt Lake Temple in a branding fashion constitute trademark and/or trade name infringement . . . ."

4. ". . . [U]se of the term MORMON and/or an image of the Salt Lake Temple constitute unfair competition . . . ."

[Dkt. 9-7]. After more than two years of promotion, IRI now insists that Mormon Match build a new business, stop using "Mormon," and stop displaying a licensed photograph.

Plaintiff asks the Court to protect it from IRI shutting down Mormon Match's business. Plaintiff's Verified Complaint also asks for a declaration that the Dating Website can describe dating services as "Mormon," call itself "Mormon Match," and display a licensed photograph of the Salt Lake Temple.

This Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion") is not about trademark rights to Mormon Match's logo. That trademark does not exist because IRI moved to block registration. This motion is also not about "Mormon" as a "service mark." Many Mormon dating websites have "Mormon" or temple drawings in their logos. This motion is about IRI's claims to own "Mormon" and a photograph. IRI opposed injunctive relief, [Dkt. 24], and this Reply follows.

IRI now sues Plaintiff for trademark infringement, unfair competition, and cybersquatting. IRI also asks for a declaratory judgment blocking registration of Mormon Match's logo. [Dkt. 23] That claim entirely duplicates claims IRI already made in an ongoing trademark proceeding. Arguments about the logo's registration are properly made in that proceeding, where IRI faces a motion to dismiss.

## STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

The issue before the Court is narrow: whether the Court should restrain and enjoin IRI from shutting down the Dating Website for using the word "Mormon" and a licensed photograph. The factors considered are: (1) Plaintiff's likelihood of success on the claim that the Dating Website can use the word "Mormon" and display a Salt Lake Temple photograph; (2) Plaintiff's threat of irreparable injury if IRI shuts down the Dating Website; (3) whether IRI faces greater injury if the Court stops IRI from shutting down the Dating Website; and (4) whether the injunction serves the public interest. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).

## SUMMARY OF THE ARGUMENT

The Court should issue relief. Plaintiff shows likely success on the merits, substantial threat of irreparable harm, a favorable balance of equities, and public interest.

Nobody completely owns "Mormon," which is often generic or merely descriptive. IRI does not have rights to "Mormon" or all images of the Salt Lake Temple in online dating or social introduction. Marks are enforced for the goods and services where they are registered or used. None of IRI's marks are registered or used for those online dating. Even if IRI once had such rights in online dating (it never did), it failed to police or abandoned those rights as numerous dating websites brand as "Mormon."

Plaintiff is likely to succeed on the claim that the Dating Website can use the word "Mormon" and a licensed image of the Salt Lake Temple. Trademark infringement requires a likelihood of confusion, not a mere possibility of confusion. Here there is no likelihood of confusion. A multifactor analysis only confirms this. Regardless, Mormon Match's use of "Mormon" is nominative or statutory fair use.

Without an injunction, Plaintiff faces total loss of business, which is irreparable. This injury is also irreparable because damages are difficult to calculate. Plaintiff's business should not be subject to the whims of IRI's lawyers. IRI has no right to force Plaintiff to abandon a name and Internet domain he spent two years building, and start a new business from scratch under a new name and Internet domain.

The equities favor Plaintiff. Mormon Match faces an existential threat to its business. IRI does not suffer at all. Many dating websites brand as Mormon. One more does not harm IRI. Further, the Dating Website's content is not infringing.

3

Finally, the public interest favors an injunction. IRI's legal theories would put at risk nearly every religiously themed commercial website. Moreover, there is a public interest in preventing trademark bullying. The injunction should issue.

IRI's other speculations and accusations about Plaintiff's motivations, sincerity, and religious faith are demonstrably false, baseless, or irrelevant. The Court should disregard these comments attacking Plaintiff without advancing a legal argument.

## ARGUMENT

### I.    IRI Does not Own the Word Mormon

All words are not equal in the eyes of trademark law. Words like "Mormon" get limited protection as "generic" or "merely descriptive." *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (2d Cir. 1976).

Mormon is often generic because it means a "genus" or group, as in "I'm a Mormon," instead of a specific person or source, as in "I am President Barrack Obama." Mormon is also often descriptive, because it can describe nouns. For example, "Mormon Church" informally means the Church of Jesus Christ. However "Mormon doctrine," "Mormon studies," "Mormon blog," and "Mormon Match" do not mean the Church of Jesus Christ. "Mormon" can describe many nouns besides the Church.

"Mormon" is merely descriptive for online dating. It has not acquired secondary meaning as it doesn't identify "a single thing coming from a single source." *Aloe Crème Labs. Inc. v. Milsan, Inc.*, 423 F.2d 845, 849 (5th Cir. 1970).

Recent examiner opinions denying registration of "THE MORMON

4

MATCHMAKER" state that "Mormon" is merely descriptive for online dating[1] (there the applicant disclaimed "MATCHMAKER"). An April 23, 2012 office action explained:

(i) "Mormon" as "an intended user or group of users of a product or service is merely descriptive." *In re Planalytics, Inc.*, 70 USPQ2d 1453 (TTAB 2004) (GASBUYER merely descriptive of intended user of services for pricing and purchasing natural gas); *In re Camel Mfg. Co.*, 222 USPQ 1031 (TTAB 1984) (MOUNTAIN CAMPER merely descriptive of intended users of services for outdoor equipment and apparel).

(ii) Owners of descriptive marks should not "inhibit[] competition in the marketplace and . . . [bring] costly infringement suits . . . ." *In re Abcor Dev. Corp.,* 588 F.2d 811, 813, 200 USPQ 215, 217 (C.C.P.A. 1978).

(iii) "Businesses and competitors should be free to use descriptive language . . . in advertising and marketing materials." *In re Styleclick.com Inc.*, 58 USPQ2d 1523, 1527 (TTAB 2001).

Exhibit 1 to accompanying Declaration of Siddartha Rao dated May 5 ("Rao Decl."). A later office action rejected the applicant's claims of acquired distinctiveness, and reiterated that "THE MORMON MATCHMAKER" is merely descriptive because it "clearly references the nature of the services and the intended users of the services." (Rao Decl. Ex. 2). Similarly, trademark examiners have found "LDS" descriptive for social networking. LDS, meaning "Latter-day Saint" or "Mormon," also describes the users of such services. (Rao Decl. Exs. 3 and 4). Merely descriptive terms do not get trademark protection. Nobody owns "Mormon" for online dating.[2]

---

[1] These examiner opinions apply settled law to substantially the same facts. While not precedential, there are no contrary examples, and these opinions should be considered highly indicative of the result of applying trademark law to the facts here.

[2] Other "Mormon" marks have been denied Principal Register registration as descriptive (e.g. "Mormon Savings," and "Mormon in Manhattan"). (Rao Decl. Exs. 5–6).

5

## II.  IRI has not Established Trademark Rights for Online Dating

As IRI's cases confirm, registration provides evidence of rights only for "specified goods or services." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010); *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 10 (5th Cir. 1974) (same). IRI's "MORMON" trademarks are not registered for online dating or introduction and do not evidence rights for those services.

IRI's further admits "the Church does not offer a 'dating service'". [Dkt. 24 p. 9]. Yet IRI imagines Mormon.org is like a dating service because it profiles Mormons. By analogy, the law firm websites of IRI's attorneys are like dating services because they profile lawyers.[3] The primary purpose of Mormon.org is outreach to "investigators," or non-Mormons considering conversion. *Mormon.org's Redesign Connects Members and Investigators*, THE CHURCH (September 15, 2010).[4] This is why Mormon.org provides no way to contact profiled Mormons, a *sine qua non* of introduction and dating, but does let visitors "chat" online with missionaries. *See*, Bosker, Bianca, *Hook of Mormon: Inside the Church's Online-Only Missionary Army*, THE HUFFINGTON POST (April 14, 2014) (describing conversion after chats with Mormon.org missionaries).[5] IRI also strains to equate "educational services related to dating" and "instruction in . . . marital relations" to dating and social introductions. [Dkt. 24 p. 9]. This is like saying an etiquette class teaching proper table manners provides a similar service as a restaurant, or a place to eat. These arguments are unavailing.

---

[3] *See*, Profile of attorney Michael Grow: http://www.arentfox.com/people/michael-grow; profile of attorney Robert Schick: http://www.schickcopeland.com/attorney/robert-m-schick/.

[4] https://www.lds.org/church/news/mormonorgs-redesign-connects-members-and-investigators.

[5] http://www.huffingtonpost.com/2014/04/09/mormon-church-online_n_5024251.html.

IRI asserts some of its marks are "incontestable." This has nothing to do with the strength of the marks. *Safer, Inc. v. OMS Investments, Inc.*, 94 USPQ2d 1031 (TTAB 2010) (incontestability establishes presumed validity, not strength); *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 171 (5th Cir.1986), *cert. denied*, 481 U.S. 1069 (1987) (same); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 934 (4th Cir.1995) (same); *Miss World (U.K.) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1448-49 (9th Cir.1988) (same). IRI also contends the "family" of "MORMON" marks confers strength. The family of marks doctrine applies only if the common element is strong, and does not itself establish strength. *Aloe Crème Labs., Inc.*, 423 F.2d at 848 (granting protection to weak family marks risks giving a monopoly); *Victoria Secrets Brand Management v. Sexy Hair Concepts*, 2009 WL 955795 (S.D.N.Y. 2009) (family of incontestable marks held weak for descriptiveness).

A strong mark is "rarely" used by third parties, while a weak mark is "often used by other parties." *Exxon Corporation v. Texas Motor Exchange of Houston*, 628 F.2d 500, 504 (5th Cir.1980). "Mormon" is a weak mark often used by other parties. As Mormon writer Jana Riess states: "'Mormon' is how we Mormons find each other [online]. It's probably how you found this blog post." Riess, Jana, *Who Owns the Name Mormon*, RELIGION NEWS SERVICE (April 24, 2014);[6] *see*, Matchar, Emily, *Why I Can't Stop Reading Mormon Housewife Blogs*, SALON (Jan. 15, 2011).[7] Because IRI's marks are weak for online dating, IRI can't stop others from using "Mormon" in online dating.[8]

---

[6] http://janariess.religionnews.com/2014/04/24/owns-word-mormon/.
[7] http://www.salon.com/2011/01/15/feminist_obsessed_with_mormon_blogs/.
[8] IRI downplays five years of examiner findings that prevented it from broadly trademarking Mormon. The examiner allowed IRI to trademark Mormon.org only after

Even if IRI once had trademark rights in online dating (it never did), it has lost those rights by failure to police and abandonment. Thomas McCarthy, McCarthy On Trademarks And Unfair Competition § 17:8 (2007); *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1080 (5th Cir.1997) (abandonment is "loss of trade significance" from widespread use).  Many dating websites have logos with "Mormon," including:

| Name | Logo |
|---|---|
| The Mormon Matchmaker themormonmatchmaker.com | |
| Meet Mormon Singles meetmormonsingles.com | |
| Local Mormon Singles localmormonsingles.com | |
| Mormon Matchmaking mormonmatchmaking.com | |
| My Mormon Crush mymormoncrush.com | |

IRI has not complained about these websites.  Similarly, IRI never communicated any objections to Plaintiff during his two years of promotion and one year of website hosting.

IRI has singled out Plaintiff of all Mormon dating websites.  IRI claims this is because no other business has applied for trademark. The Mormon Matchmaker did apply for a trademark. IRI also can't prohibit "Mormon" in online dating logos.

---

IRI represented it would be for services similar to the narrow services of "Mormon." Now IRI improperly attempts to argue its Mormon.org mark is broadly protectable.

8

### III.     The Court Should Grant Injunctive Relief

#### A. Plaintiff Establishes Likelihood of Success on the Merits

Trademark infringement requires likelihood of confusion. Mormon Match's content will not confuse customers and is not infringing. Courts in the Fifth Circuit look at a "nonexhaustive" list of eight likelihood of confusion factors: (1) the type of trademark (strong or weak); (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). "No one factor is dispositive," and "a court is free to consider other relevant factors." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998). Likelihood of confusion requires "a probability," not mere possibility. See *Xtreme Lashes*, 576 F.3d at 226.

All factors support plaintiff: (1) IRI's marks are weak. (2) Where the common element is weak, similarity is reduced.[9] (3) IRI and the Church do not offer online dating services. (4) Mormon.org is directed at non-Mormons for conversion while the Dating Website is directed at Mormons for dating. (5) IRI's marks are not advertised on online dating websites. (6) Mormon Match is not trading on the Church's good will. The Dating Website displays a notice that Mormon Match is not commercially affiliated with the Church. (7) IRI reviewed thousands of comments posted to the Dating Website and found no confusion. (8) Mormon Match's Mormon purchasers know the Church as "The Church of Jesus Christ of Latter-day Saints," a logo appearing on Church websites.

---

[9] *See, e.g.*, *In re Bed & Breakfast Registry*, 791 F.2d 157, 229 USPQ 818 (Fed. Cir. 1986) (BED & BREAKFAST REGISTRY for making reservations in private homes held not likely to be confused with BED & BREAKFAST INTERNATIONAL for room booking agency services).

IRI disingenuously misrepresents comments referring to the Dating Website as an "LDS" website.  As IRI knows, the acronym "LDS" means Latter-day Saint and is largely synonymous with "Mormon." If IRI sincerely believed "LDS" indicates confusion, it would have stopped LDS branded websites, including dating websites like LDS Singles (www.ldssingles.com), LDS Planet (www.ldsplanet.com), LDS Mingle (www.ldsmingle.com), LDS Pals (www.ldspals.com), LDS Passions (www.ldspassions.com), etc.  IRI deliberately misrepresents facts because it lacks any real argument. The comments show demand for a Mormon-run Mormon dating service.

Similarly, as IRI admits, many Mormons desire to be married in Mormon Temples.  [Dkt. 24-1 at ¶ 22].  Mormons associate the Salt Lake Temple with marriage between Mormons.  This is not confusing.  Yet IRI repeatedly accuses Plaintiff of "imitating" its Temple Design Marks.  To be clear, IRI says that this photograph



is "imitating" this drawing: 

Mormon Match uses a licensed photograph of the Salt Lake Temple on a Dating Website. (See accompanying affidavit of Jonathan Eller, sworn to May 5, 2014 ("Eller Aff.") at ¶ 48). IRI has trademarked a drawing for "printed instructional manuals" and "video recordings" featuring religious subject matter. There is no likelihood of confusion.

IRI now repeatedly accuses Plaintiff of using a "counterfeit" Mormon mark as a service mark. IRI's speculations are irrelevant because nominative fair use protects Plaintiff's use. *Pebble Beach Company v. Tour 18 I Limited*, 155 F.3d 526, 545 (5th Cir.1998); *see also*, *Board of Supervisors for Louisiana State University v. Smack Apparel Company*, 550 F.3d 465, 488 (5th Cir.2008) (recognizing nominative fair use defense). Plaintiff's use is nominative fair use because it only uses the necessary word "Mormon," (and not "Mormon Tabernacle Choir," "Mormon Handicraft," or "Mormon Church") and a notice on the Dating Website negates any suggestion of Church affiliation, sponsorship, or endorsement. *Smack Apparel*, 550 F.3d at 489.

Plaintiff's use is also protected statutory fair use. *See*, *Venetianaire Corp. v. A & P Import Co.*, 429 F.2d 1079, 1081–82 (5th Cir. 1970). Statutory fair use protects good faith use of descriptive terms in their descriptive rather than trademark sense, *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 271 (5th Cir. 1999), and stops a trademark owner from "appropriat[ing] a descriptive term for his exclusive use and so prevent[ing] others from accurately describing a characteristic of their goods," *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185, 1186–87 (5th Cir. 1980).

11

Plaintiff's reliance on *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786 (5th Cir. 1983) is proper, as its discussion of fair use remains valid. *Zatarains* also held that fair use does not apply when there is a likelihood of confusion. This latter holding was abrogated when the Supreme Court held that fair use *can* apply *even where there is a likelihood of* confusion, as Plaintiff also argues in its moving papers. *KP Permanent Makeup, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 121 (2004). It is unclear what IRI means by pointing this out since these cases support Plaintiff's position.

### B. Plaintiff Establishes Irreparable Harm Absent Relief

Destruction of business constitutes irreparable injury. *Nat'l Screen Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647 (5th Cir.1962) (affirming preliminary injunction where denial would result in the destruction of movant's business). Here, IRI insists Mormon Match abandon its name, abandon its website, abandon its brand, and build a new business from scratch after two years of promotion. Although IRI compares this to a change of signage, it is an irreparable destruction of Plaintiff's business.

IRI argues business loss is compensable with money damages. However, "[a] substantial loss of business may amount to irreparable injury if the amount of lost profits is difficult or impossible to calculate . . . ." *Florida Businessmen v. City of Hollywood*, 648 F.2d 956, 958 n. 2 (5th Cir.1981)). Here, IRI insists Plaintiff start a new business from scratch before Mormon Match has had a chance to launch and build a revenue stream. Accordingly, it will be difficult to calculate lost profits.

IRI also speculates Plaintiff could provide dating services under a different name. This argument misses the point that Plaintiff has a right to use the name he has been promoting for two years, and there is no basis to force him to start a new business

with a different name. Plaintiff's competitors will presumably continue to brand as "Mormon," purchase advertising in "Mormon" and even trade on the Plaintiff's good will, as they will not face the restrictions IRI wants to put on Plaintiff.

IRI argues that "JDate.com" successfully provides dating services to Jews without using the word "Jew" or "Jewish" in its brand. JDate also has purchased AdWords for Jewish Matchmaking, which directs searches of "Jewish Match" to its website. (Rao Decl. Ex. 7). If Plaintiff is forced to abandon Mormon brand and domain names, any new business he starts will also require ongoing increased advertising costs, while his competitors do not face such costs. Moreover, Jewish Match, Muslim Match, and Catholic Match are active dating websites with seemingly no confusion.

IRI says that Plaintiff does not face harm because "in the course of their continuing settlement discussions, IRI has agreed to maintain the status quo for the time being," and "IRI will not seek to have the website taken down." As the Court is aware the status quo agreement expired the day IRI made this representation. IRI is now perfectly capable of acting to shut down the Dating Website.

Just a month ago, IRI claimed to own the word Mormon and tried to end Plaintiff's business. Now it has apparently changed its mind. It makes no argument for total ownership of Mormon in its opposition. IRI can change its mind again. Plaintiff's business should not be subject to the whims of IRI's lawyers.

Finally, IRI says that Plaintiff faces no threat because IRI couldn't shut down the Dating Website the first time it tried. IRI's failure does not preclude a second attempt. IRI has sued Plaintiff for trademark infringement, unfair competition, and cybersquatting, and apparently believes it has the right to shut down the Dating Website.

13

### C. The Equities Favor Plaintiff

The balance of equities clearly favors Plaintiff. The harm to Plaintiff of losing his business is clear. IRI suffers no harm. Plaintiff's mere existence cannot be harm when Mormon Match would be just one more of many dating websites branded as Mormon. Further, the Dating Website is not infringing and does not harm IRI.

### D. The Public Interest Favors an Injunction

IRI's arguments would put at risk nearly every religiously themed website or online community. Moreover, IRI earnestly argues that Eller should have behaved like others who abandoned their trademark applications in the face of IRI's claims to own "Mormon." This is not a legal argument. It is, however, strongly suggestive of trademark bullying, and IRI's financial motive to stop a judgment that would prevent IRI from further bullying. Prevention of trademark bullying is in the public interest. In 2010 President Obama tasked the Department of Commerce to study the extent to which small businesses may be harmed by abusive trademark enforcement tactics.[10] Accordingly, the public interest favors issuing a restraining order and injunction.

## IV. The Court Should Disregard or Strike IRI's Accusations and Speculations

Plaintiff's reasons for starting this action are fully explained by uncontested facts. Plaintiff tried to talk to IRI's lawyers to settle several times. IRI's lawyers never responded. Instead IRI tried to shut down the Dating Website and servers. The Court should disregard IRI's conspiracy theories because they are not necessary to

---

[10] See, Report to Congress, *Trademark Litigation Tactics and Federal Government Services to Protect Trademarks and Prevent Counterfeiting* (April 2011), *available at*: http://www.uspto.gov/ip/TMLitigationReport_final_2011April27.pdf.

14

explain Plaintiff's actions. Eller simply wants to run a business lawfully and benefit the Latter-day Saint community. (Eller Aff. ¶¶ 22-38). He does not enjoy this litigation which has already resulted in smears to his reputation, accusations of apostasy, and other negative reactions within the Mormon community. (Eller Aff. ¶¶ 52-56). He sought protection because IRI forced him with an existential business threat. (Eller Aff. ¶ 51).

IRI submits a declaration of Barry Taggart claiming personal knowledge that Eller is "deliberately . . . pursuing his own financial interests at the expense of the Church," [Dkt. 24-1 at ¶¶ 47–48]. Eller has never met or spoken to Taggart. (Eller Aff. at ¶ 53). The Court should strike Taggart's statements about Plaintiff's intentions as hearsay and not the best evidence. Plaintiff is available as a declarant.

IRI's other accusations are false or irrelevant. Eller and his business partners created Mormon Match's logo. (Eller Aff. ¶ 39). This means "no other firm, corporation or association has the right to use" it. Eller did not commit perjury when he told the truth. Eller is not asking to own the words "Mormon" or "Match." He is simply trying to stop other people from copying Mormon Match's logo. (Eller Aff. ¶ 41).

Finally, although IRI repeatedly questions Eller's faith, this Court cannot decide that religious issue. *See*, *McClure v. Salvation Army*, 460 F.2d 553, 558–60 (5th Cir. 1972) (Court lacks jurisdiction over ecclesiastical issues). IRI's insinuations have no bearing on the fact that Eller is a Mormon launching a business for Mormons that can be fairly described as "Mormon." This is a case about secular law and IRI's claims to own "Mormon." It is not a case about whether Eller is a good enough Mormon for IRI. Nonetheless, IRI has utterly failed to contradict or discredit Eller's sworn testimony that he is, in fact, a devout Mormon.

**CONCLUSION**

For each and every one of the foregoing reasons, Plaintiff respectfully requests that injunctive relief issue restraining and enjoining defendant Intellectual Reserve, Inc. from interfering with Plaintiff's use of the Dating Website.

Respectfully submitted,

___/Siddartha Rao/___
Siddartha Rao, Esq.
*Counsel for Plaintiff*
Admitted *pro hac vice*
121 E. 12th St. Apt. LG
New York, New York 10003
(646) 221 1846

Kiernan McAlpine, Esq.
*Local counsel for Plaintiff*
(Admitted in the Southern
District of Texas)
3310 Louisiana St Ste 2413
Houston, TX 77006
(832)314-1383
Fax: (832)201-7814