IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JONATHAN ELLER and MORMON MATCH LLC, | \| |
| | \| |
| Plaintiffs, | \| |
| v. | \| CIVIL ACTION NO.: 14-CV-00914 |
| | \| |
| INTELLECTUAL RESERVE, INC., a Utah Corporation, holding intellectual property for The Church of Jesus Christ of Latter-day Saints, | \| |
| Defendant. | \| |

**MEMORANDUM OF LAW SUPPORTING PLAINTIFFS' COMBINED FRCP 12 (B), (C), AND (F) MOTION TO DISMISS, FOR JUDGMENT, AND TO STRIKE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

NATURE AND STAGE OF THE PROCEEDING  . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT  . . . . . . 3

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.  Facts Admitted by IRI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    II.  Facts Alleged by IRI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    III.  Facts Subject to Judicial Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.  Meaning of "Mormon" in the English Language . . . . . . . . . . . . . 9

        B.  Trademark Examiner Findings Concerning "Mormon" . . . . . . . 11

        C.  Pervasive and Widespread Online Use of "Mormon" . . . . . . . . .12

        D.  The Church's Logo and Mormon Match's Dissimilar Logo . . . . 16

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    I.  IRI's Counterclaims are Legally Insufficient . . . . . . . . . . . . . . . . . . . . . .17

    II.  Fair Use Bars Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    III.  IRI Fails to Allege Rights in Descriptive Uses of Mormon . . . . . . . . . . . . 21

    IV.  IRI Fails to Allege Rights to Mormon in Online Dating . . . . . . . . . . . . . 21

    V.  IRI Fails to Allege Likelihood of Confusion . . . . . . . . . . . . . . . . . . . . . . 22

    VI.  IRI Fails to Plead with Particularity Required by Fed. R. Civ. P. 9(b) . . . 23

    VII.  IRI Fails to Allege Cybersquatting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    VIII.  IRI's Declaratory Judgment Action Should be Dismissed . . . . . . . . . . . . 24

    IX.  The Court Should Grant Mormon Match Judgment on the Pleadings . . . 24

    X.  The Court Should Strike IRI's Defenses as Insufficient . . . . . . . . . . . . . .25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

## TABLE OF AUTHORITIES

### Cases

*Aloe Crème Labs. Inc. v. Milsan, Inc.*, 423 F.2d 845 (5th Cir. 1970) . . . . . . . . . . . . .3, 21

*Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225 (5th Cir. 2010) . . . . . . . . . 21

*Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3 (5th Cir. 1974) . . . . . . 21

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Board of Supervisors for Louisiana State University v.*
     *Smack Apparel Company*, 550 F.3d 465 (5th Cir.2008) . . . . . . . . . . . . . . . . . .3, 20

*Boston Professional Hockey Ass'n v.*
     *Dallas Cap & Emblem Manufacturing*, 510 F.2d 1004 (5th Cir.1975),
     *cert. denied*, 423 U.S. 868 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Boyds Collection Ltd. v. Herrington & Co.*, 65 USPQ2d 2017 (TTAB 2003) . . . . . .3, 24

*Century 21 Real Estate Corp. v. Lendingtree*, 425 F.3d 211(3d Cir. 2005) . . . . . . . . . 20

*Exxon Corp. v. Oxxford Clothes*, Inc., 109 F.3d 1070 (5th Cir.1997) . . . . . . . . . . . . 3, 21

*Exxon Corp. v. Texas Motor Exchange of Houston*,
     628 F.2d 500 (5th Cir.1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 21

*Gonzalez v. Kay*, 577 F.3d 600 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Illinois High School Ass'n v. GTE Vantage*, 99 F.3d 244 (7th Cir. 1996) . . . . . . . . . . . 20

*In re Bed & Breakfast Registry*, 791 F.2d 157 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . 22

*In Re Cyberonics Inc. Securities Litigation*, 523 F. Supp. 2d 547 (S.D. Tex. 2007) . . . . . 9

*In re Planalytics, Inc.*, 70 USPQ2d 1453 (TTAB 2004) . . . . . . . . . . . . . . . . . . . . . . . 3, 21

*In re Camel Mfg. Co.*, 222 USPQ 1031 (TTAB 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*In re Schmid Laboratories v.*
     *Youngs Drug Products Corp.*, 482 F.Supp 14 (D.N.J. 1979) . . . . . . . . . . . . . . . . .18

*K.P. Permanent Makeup, Inc. v. Lasting*
        *Impression I, Inc.*, 543 U.S. 111 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18, 19

*K.P. Permanent Make-up, Inc. v.*
        *Lasting Impression I, Inc.*, 328 F.3d 1061 (9th Cir. 2003) . . . . . . . . . . . . . .18, 19

*Lamparello v. Falwell*, 420 F.3d 309, 314 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . .  22

*Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015 (5th Cir.1996) . . . . . . . . . . . . . . . . . 9

*Marathon Manufacturing Co. v.*
        *Enerlite Products Corp.*, 767 F.2d 214 (5th Cir.1985) . . . . . . . . . . . . . . . . .17, 18

*MedImmune v. Genentech*, 549 U.S. 118 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Nami v. Fauver*, 82 F.3d 63 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*New Kids on the Block v. New America Pub.*, 971 F.2d 302 (9th Cir.1992) . . . . . . . . . 20

*Oreck Corp. v. U.S. Floor Systems, Inc.*, 803 F.2d 166
        (5th Cir.1986), *cert. denied*, 481 U.S. 1069. . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*Park 'N Fly*, 469 U.S.189 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Pebble Beach Company v. Tour 18 I Limited*, 155 F.3d 526 (5th Cir.1998) . . . . . . . 19, 20

*Plotkin v. IP Axess Inc.*, 407 F.3d 690 (5th Cir.2005) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Society of Financial Examiners v. National Ass'n of*
        *Certified Fraud Examiners, Inc.*, 41 F.3d 223
        (5th Cir.1995), *cert. denied*, 515 U.S. 1103 . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . 20

*Texas v. West Pub. Co.*, 882 F.2d 171 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Virtual Works, Inc. v Volkswagen of America, Inc.*,
        238 F.3d 264, 267 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658 (5th Cir. 2000) . . . . . . 3, 23

*Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221 (5th Cir. 2009) . . . . . . . . 3, 22

## **Statutes and Rules**

15 U.S.C. § 1115(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

Fed. R. Civ. P. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17

Fed. R. Civ. P. 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 23

Fed. R. Civ. P. 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Evid. 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Trademark Board Manual of Procedure § 510.02(a) . . . . . . . . . . . . . . . . . . . . . . 3, 24

## Treatises

Thomas McCarthy, McCarthy On Trademarks
     And Unfair Competition § 17:8 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## Senate Reports

S. Rep. No. 100-515 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

S. Rep. No. 106-140 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## Secondary Sources

ARTHUR CONAN DOYLE, A STUDY IN SCARLET (1887) . . . . . . . . . . . . . . . . . . . . . . . .10

CHARLES DICKENS, THE UNCOMMERCIAL TRAVELER (1875)  . . . . . . . . . . . . . . . . . 9, 10

HAROLD BLOOM THE AMERICAN RELIGION:
     THE EMERGENCE OF A POST-CHRISTIAN NATION
     (New York: Simon and Shuster, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

JON KRAKAUER, UNDER THE BANNER OF HEAVEN:
     A STORY OF VIOLENT FAITH 7 (First Anchor Books 2004) . . . . . . . . . . . . . . 10, 11

JULES VERNE, AROUND THE WORLD IN EIGHTY DAYS (1873) . . . . . . . . . . . . . . . . . . 10

Lambert, Neal, Saints, Sinners and Scribes:
     A Look at the Mormons in Fiction,
     36 UTAH HISTORICAL QUARTERLY 63–76 (Winter 1968) . . . . . . . . . . . . . . . . . 10

Meinig, D. W. The Mormon Culture Region: Strategies and Patterns
     in the Geography of the American West, 1847-1964,
     55 ANNALS OF THE ASSOC. OF AM. GEOGRAPHERS 191 (Jun. 1965) . . . . . . . . . .10

OXFORD ENGLISH DICTIONARY (3d ed. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## PRELIMINARY STATEMENT

After failing to get broad U.S. trademark registration in the generic, common word "Mormon," defendant Intellectual Reserve, Inc. ("IRI") makes frivolous legal claims here to appropriate the word.  Mormon Match, LLC, the target of IRI's frustrations, is a small company founded by Mormons to help Mormons meet, date, and marry.  The company's founders strive to excel in a competitive market by better understanding and responding to the unique needs of Mormon singles.

Dismissal is appropriate as IRI's claims waste valuable judicial resources in a misguided and meritless attempt to force a small company out of its right to use descriptive speech.  "Mormon" merely describes an essential characteristic of Mormon Match's dating services and intended customers.   Plaintiffs' use of the generic, descriptive word "Mormon" to mean "Mormon" is lawful and is protected by fair use. Trademark law does not give IRI a monopoly on descriptive speech. "Mormon" is used in numerous websites in logos, domain names, or in website copy to describe content, services, and intended audience.  Mormon has no trade significance for online dating. If IRI has any claims, they are against the English language, and not Plaintiffs.

The claims in this lawsuit are easily resolved on the pleadings. Accordingly, Plaintiffs respectfully submit this memorandum of law in support of their motion seeking an order dismissing IRI's counterclaims and granting judgment on Plaintiffs' injunctive and declaratory judgment claims, pursuant to Rules 12(b)(6) and (c) of the Federal Rules of Civil Procedure, and granting all other relief as the Court may deem just and proper.

## NATURE AND STAGE OF THE PROCEEDING

Jonathan Eller is a founder and member of Mormon Match, LLC (with Eller, "Mormon Match"), formed to run a Mormon dating website at dateamormon.com and mormon-match.com (the "Dating Website"). Like numerous Mormon websites, the Dating Website uses the word "Mormon" in its logo and domain names and displays a photograph of the Salt Lake Temple.

Defendant IRI asserts all-encompassing trademark rights in the term "MORMON," and any image of the Salt Lake Temple. IRI's trademarks are admittedly not registered or used for online dating. Eller filed an order to show cause for a restraining order and preliminary injunction after IRI tried to shut down Mormon Match's websites and servers. [Dkt 3]. Eller also filed a Verified Complaint seeking injunctive and declaratory relief,[Dkt. 1], because IRI asserts rights it does not have, in conflict with Mormon Match's lawful business activity. [Dkt. 1]. Mormon Match asked the Court to enter a declaration of non-infringement, resolving this dispute. *Id.* at ¶ 120.

In response, IRI counter-sued Eller for federal and common law trademark infringement, and federal unfair competition, and cybersquatting. [Dkts. 23, 33]. IRI also wants this Court to order the Trademark Trial and Appeal Board (the "Trademark Board") to rule in IRI's favor in a separate proceeding. *Id*.

At a hearing on May 6, 2014 the Court consolidated the injunction hearing with the trial and added Mormon Match, LLC to the caption. [Dkt 31]. The Court also gave IRI until May 12, 204 to assert its claims against Mormon Match, LLC as appropriate. *Id.* IRI filed its Amended Answer (the "Answer") asserting all its claims against Mormon Match. IRI also added new substantive allegations and seeks new and

additional relief.  (Counterclaims ¶¶ 24, 82, Prayer for Relief ¶ 6).  Finally, IRI added new parties to the caption, John Does 1–5.

### STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

One question resolves every claim in this case: whether IRI has complete ownership of "MORMON" and all images of the Salt Lake Temple for online branding, naming, or advertising.   The answer is no, IRI's claims are easily dismissed, and judgment should issue on the pleadings.   Specifically, these issues are to be ruled upon:

1. Whether IRI pleads facts establishing that nominative and statutory fair use bar IRI's claims.  *KP Permanent Makeup, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 121 (2004); *Board of Supervisors for Louisiana State University v. Smack Apparel Company*, 550 F.3d 465, 488 (5th Cir.2008).

2. Whether IRI's pleading is deficient because the word "Mormon" is merely descriptive for online dating.  *In re Planalytics, Inc.*, 70 USPQ2d 1453 (TTAB 2004); *Aloe Crème Labs. Inc. v. Milsan, Inc.*, 423 F.2d 845, 849 (5th Cir. 1970).

3. Whether IRI's pleading is deficient because pervasive use of Mormon to brand websites establishes IRI lacks exclusive rights to "Mormon."  *Exxon Corp. v. Oxxford Clothes*, Inc., 109 F.3d 1070, 1080 (5th Cir.1997); *Exxon Corporation v. Texas Motor Exchange of Houston*, 628 F.2d 500, 504 (5th Cir.1980).

4. Whether IRI fails to plead facts that can plausibly show a likelihood of confusion. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009).

5. Whether IRI' fails to plead a cybersquatting claim.  *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 670 (5th Cir. 2000).

6. Whether IRI's declaratory judgment claim should be dismissed in favor of a proceeding before the Trademark Board.  *Boyds Collection Ltd. v. Herrington & Co.*, 65 USPQ2d 2017, 2019 (TTAB 2003); Trademark Board Manual of Procedure ("TBMP") § 510.02(a).

7. Whether this Court should strike defenses in IRI's Answer as "insufficient."  Fed. R. Civ. P. 12(f).

## SUMMARY OF THE ARGUMENT

Dismissal is appropriate where a party fails to state a plausible claim for relief.  Here, IRI's claims fail for at least four reasons.  *First*, fair use bars IRI's claims.  *Second*, the word "Mormon" is merely descriptive of Mormon Match's dating services.  *Third*, IRI has failed to police or abandoned rights in "Mormon" for online dating.  *Fourth*, Mormon Match's use of Mormon and a photograph of the Salt Lake Temple do not create a likelihood of confusion, and in fact has not created any confusion.

IRI's claims additionally because IRI does not satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b) for claims sounding in fraud.  IRI's cybersquatting claim additionally fails because IRI does fails to show bad faith intent to profit from IRI's marks.  IRI's declaratory judgment claim should also be dismissed as improperly seeking to inject this Court into an ongoing trademark proceeding  The same reasons support entering judgment on Mormon Match's claims.

Finally, the Court should strike IRI's defenses as insufficient.

## STATEMENT OF RELEVANT FACTS

### I.    Facts Admitted by IRI

As admitted[1] in IRI's Amended Answer and Counterclaims [Dkt. 33] (the "Answer") IRI is a corporation holding intellectual property used by The Church of Jesus Christ of Latter-day Saints (the "Church").  (Answer at ¶ 2).  Mormon Match's founders

---

[1] IRI's Answer improperly "admits" facts Plaintiff never alleged.  *See e.g.* ¶ 18 of the Answer "admitting" that Mormon Match's logo is infringing.  An Answer to a Complaint should admit or deny the allegations of the Complaint, not un-alleged speculations the Defendant wishes were true.  *See e.g.*, Fed. R. Civ. P. 8(b)(1)(B).

are Mormons and members of the Church.  (Answer ¶¶ 27, 29, 114).

On June 3, 2013 Plaintiff Eller filed application Serial No. 85/949670 to trademark "MORMON MATCH (and Design)" (the "Logo").  (Answer ¶ 41).  This Logo consists of "Mormon" in blue and "Match" in gold with stylized figures within the first letter "M."  (Answer ¶ 11).  The application seeks registration for "Internet-based dating, social introduction, and social networking services."  (Answer ¶ 42).  After amendment, that application expressly disclaims the words "Mormon Match" and only claims design elements such as shapes and colors.  (Answer ¶¶ 43–44).  The Application published for opposition on October 29, 2013.  (Answer ¶ 45).  After extending its time to oppose, IRI filed Notice of Opposition Number 91215064 on February 24, 2014, before the Trademark Trial and Appeal Board (the "Board"), asserting ownership of "MORMON" for a "variety of goods and services."  (Answer ¶¶ 13, 46–48).  That Opposition is pending and the Logo is not currently a registered mark.  *Id.*

IRI abandoned a prior application for the mark MORMON, Serial Number 78161091 after years of examiner office actions repeatedly denying registration. (Answer ¶¶ 52–53).  The correspondence included findings that "MORMON" is "merely descriptive" and "appears to be generic," (Mar. 18, 2003 Office Action); "is incapable of serving as a source-identifier for [the Church's] goods and/or services," (Nov. 24, 2003 Office Action); is "refused [registration] . . . because the proposed mark is generic for applicant's services," (Jul. 10 2004 Office Action); and is "the common descriptor of a key ingredient, characteristic or feature of the goods[,] . . . generic and thus incapable of distinguishing source," (Nov 1, 2005 Office Action).  *Id.*[2]

---

[2] IRI admits that the correspondence took place and that it "speaks for itself."

On April 4, 2014, an attorney for IRI sent a letter on behalf of IRI to Linode, LLC asserting trademark and trade dress violations and unfair competition, demanding Linode remove "infringing" content from the Dating Website, and demanding Linode shut down the Dating Website.  (Answer ¶¶ 74, 78–79).  That letter claimed comprehensive rights in the term MORMON and images of the Salt Lake Temple.  (Answer ¶ 75).  IRI does not own the word "Mormon."  (Answer ¶ 105).[3]  The Dating Website uses the word "Mormon" in its logo and in its domain name and displays a background image of the Salt Lake Temple.  (Answer ¶¶ 76–77).  "[T]he Church does not offer a 'dating service,'" [Dkt. 24 p. 9, 24-1 ¶ 43], and none of IRI's marks are registered for dating services [Dkt. 24-1 ¶ 12].[4]  Moreover, the word "Mormon" is used to refer to members of the Church,  (Answer ¶¶ 76–77).

## II.   Facts Alleged by IRI

When stripped of their sound and fury, including bare legal conclusions, unwarranted inferences, and numerous insinuations about Mormon Match, IRI alleges the following *facts* in support of its counterclaims.

IRI owns the federal marks MORMON, MORMON.ORG, MORMON TABERNACLE CHOIR, MORMON TABERNACLE CHOIR & Design, BOOK OF MORMON, MORMON HANDICRAFT, MORMON HANDICRAFT, Temple Design mark, (second) Temple Design mark, and State of Utah mark THE MORMON CHURCH, issued on May 8, 2007, November 24, 2009, September 23, 2003, December

---

[3] Because IRI failed to deny the allegations contained in paragraphs 75, and 105 of Plaintiffs' Complaint, these are deemed admitted.  Fed. R. Civ. P. 8.

[4] IRI made this admission in opposing Plaintiffs' request for injunctive relief.  Because the Court consolidated that claim with the trial, that admission is "part of the trial record."  Fed. R. Civ. P. 65(a)(2).

21, 2004, September 14, 2004, February 14, 1989, February 28, 1989, March 26, 2002, April 23, 2013, and July 18, 2002 at Registration Nos. 3239919, 3715744, 2766231, 2913694, 2883572, 1524555, 1527447, 2552030, 4323142, and Utah No. 5160149-0190 respectively (the "Religious Marks").  (Counterclaims ¶¶ 9–10, 17–18).

IRI uses its Religious Marks in interstate commerce with a "variety" of goods and services, including online services.[5]  (Counterclaims ¶ 14).  "Mormon" is descriptive of the Church, which is widely known as the "Mormon Church," and the Church has used "Mormon" to distinguish goods and services.  (Counterclaims ¶ 12).

Like many churches, the Church establishes moral standards for dating and engages in counseling services to help individuals marry.  (Counterclaims ¶ 15).  The "ultimate goal" of "worthy" members of the Church is to qualify for marriage in a Church Temple, including the temple in Salt Lake City.  (Counterclaims ¶ 16).

On June 3, 2013, Plaintiff Jonathan Eller applied to register his logo "MORMON MATCH (and Design)" No. 85/949670 with the United States Patent and Trademark Office for Internet-based dating, social introduction, and social networking services.  (Counterclaims ¶ 22).  The application truthfully states that Eller "was the owner of the mark and that no other person, firm, corporation, or association has the right

---

[5] Although IRI alleges it provides a type of social networking service the allegation is self-evidently false.  Mormon.org is a branding website and does not provide social networking.  A user or visitor to Mormon.org cannot contact or "network" with any profiled Mormon.  The Court should "not accept as true conclusory allegations, [and] unwarranted factual inferences" on a motion to dismiss.  *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir.2005); *see also Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996) (court should not accept "self-evidently false" allegations on a motion to dismiss).

to use the mark in commerce." (Counterclaims ¶ 23).[6]  Mormon Match uses a logo with the word "Mormon" and displays a photograph of the Salt Lake Temple on the Dating Website, being designed for individuals to engage in social networking and dating.[7] (Counterclaims ¶¶ 21, 25).   Mormon Match does not own the domain mormonmatch.com, but does own mormon-match.com. (Counterclaims ¶¶ 21, 26).

IRI registered marks containing "Mormon" before Mormon Match used its Logo. (Counterclaims ¶ 33).  Mormon Match could call itself something else.[8] (Counterclaims ¶¶ 27–28).  The Logo is for commercial use, and its words are the most prominent on the Dating Website.  (Counterclaims ¶ 32).  IRI did not give Mormon Match permission to call itself Mormon or show a photograph, (Counterclaims ¶ 36), but IRI and the Church have no contractual rights to stop Eller from using the word "Mormon" or a photograph, (Counterclaims ¶ 43).

In the past, IRI has threatened legal action or commenced oppositions against other mark registrants, and these registrants abandoned their marks, without any judicial decision regarding their rights.  (Counterclaims ¶ 45).  IRI also commenced an

---

[6] IRI alleges Eller later "contradicted" this "sworn statement," but offers no factual support for this false and irrelevant accusation of perjury.  (Counterclaims ¶ 24). The Court may disregard such bare legal conclusions on a motion to dismiss.

[7] Although IRI alleges this logo and photograph are "confusingly similar" "marks," these are legal conclusions not entitled to any presumption of truth on a motion to dismiss. Similarly, IRI's repeated references to the Dating Website as "infringing" is a legal conclusion not entitled to any presumption of truth on this motion.

[8] The Dating Website displays a disclaimer that it is not commercially affiliated with or endorsed by the Church.  IRI's allegations that Eller intends to deceive the public into thinking the Dating Website is affiliated with the Church are self-evidently false and should be disregarded by the Court. (Counterclaims ¶¶ 38–39, 41).  Similarly, IRI's assertion that Eller "attacked the validity" of IRI's marks should be disregarded as false, because Eller has never attacked the validity of those marks, as the pleadings and papers filed in this action show.  (Counterclaims ¶ 42).  The Court need not accord patently false assertions a presumption of truth on a motion to dismiss.

opposition against Eller and threatened him with legal action, but he did not abandon his

mark and sought a judicial determination.  (Counterclaims ¶ 47).

### III.   Facts Subject to Judicial Notice

"Judicial notice may be taken at any stage of the proceeding," including a

motion to dismiss.  Fed. R. Evid. 201(f);  *Lovelace v. Software Spectrum, Inc.*, 78 F.3d

1015, 1017-18 (5th Cir.1996).   The Court should take notice of "public record"

documents and matters capable of "accurate and ready determination" from sources

"whose accuracy cannot reasonably be questioned."   *In Re Cyberonics Inc. Securities*

*Litigation*, 523 F. Supp. 2d 547 (S.D. Tex. 2007); Fed. R. Evid. 201(b).  Here, the Court

may notice the following facts.

### A.  Meaning of "Mormon" in English Language

For almost two centuries, the word "Mormon" has generally described the

members and characteristics of religious and cultural traditions stemming from the

teachings of Joseph Smith.   The Oxford English Dictionary defines "Mormon" as a

generic noun meaning "A member or adherent of the Church of Jesus Christ of Latter-

Day Saints, a millenary Christian sect founded in 1830 at Manchester, New York, by

Joseph Smith."   The dictionary also provides a second descriptive adjective meaning,

"That is a Mormon; of, relating to, or characteristic of Mormons."[9]

Numerous cultural references attest to the generic and descriptive public

use of Mormon long before IRI registered its marks.   For example, Charles Dickens

published accounts of Mormons in the periodical *All the Year Round* on July 4, 1863

under the column title "*The uncommercial traveller.*"   These columns were later

---

[9] OXFORD ENGLISH DICTIONARY (3d ed. 2002).

compiled into a book of the same title, with chapter 22, titled "Bound for the Great Salt Lake," specifically describing Dickens' observations of "EIGHT HUNDRED MORMONS," (capitalization in original) and his conversations with a "Mormon Agent," and a Wiltshire laborer who states "O yes, I'm a Mormon . . . I'm a Mormon" when asked "You are of the Mormon religion, of course?"[10]  The term "Mormon" is also used in Jules Verne's famous novel "*Around the World in Eighty Days*," published in 1873, with chapter twenty-seven titled: "In which Passepartout Undergoes, at a Speed of Twenty Miles an Hour, a Course of Mormon History."[11]  Similarly in Sir Arthur Conan Doyle's *A Study in Scarlet*, published in 1887, Brigham Young and Mormon pioneers are characters and Mormon is used as a descriptive term.[12]

Other examples of generic and descriptive usage of "Mormon" abound. "Mormon Culture Region," or "Mormon Corridor" do not identify the Church.[13]  The Mormon History Association, an affiliate of the American Historical Association, is an independent organization with publications including *The Journal of Mormon History* and *Mormon History Newsletter*.[14]  The article "Saints, Sinners and Scribes: A Look at the Mormons in Fiction," catalogues some uses of "Mormon" in popular culture.[15]

In 1892 Leo Tolstoy famously remarked to the then U.S. foreign minister to Russia that Mormonism is "the American religion."  Well-known American literary

---

[10] *See*, http://www.gutenberg.org/dirs/etext97/unctr10h.htm.

[11] *See*, http://etc.usf.edu/lit2go/55/around-the-world-in-80-days/.

[12] *See*, http://www.literature.org/authors/doyle-arthur-conan/study-in-scarlet/part-02/chapter-03.html.

[13] *See e.g.*, Meinig, D. W. *The Mormon Culture Region: Strategies and Patterns in the Geography of the American West*, 1847-1964, 55 ANNALS OF THE ASSOC. OF AM. GEOGRAPHERS 191 (Jun. 1965).

[14] *See*, https://www.mormonhistoryassociation.org/history

[15] Lambert, Neal, *Saints, Sinners and Scribes: A Look at the Mormons in Fiction*, 36 UTAH HISTORICAL QUARTERLY 63–76 (Winter 1968).

critic Harold Bloom used this remark in the title of his 1992 book "The American Religion,"[16] which featured a discussion of Mormonism as the "quintessential" American religion. American writer Jon Krakauer echoes that view, writing that Mormonism "is now widely considered the quintessential American religion."[17]

Fully consistent with this well documented usage, the Church's style guide also provides a generic and descriptive usage of "Mormon" stating: "'Mormons' is acceptable" "[w]hen referring to Church members . . ." (i.e. as a generic noun) and "'Mormon' is correctly used . . . as an adjective in such expressions as 'Mormon pioneers,'" (i.e. as a descriptive adjective).[18] The Church further encourages the use of #Mormon as a one of a few "General Hashtags" for use in "social media discussions surrounding Mormonism."[19] On the other hand, the style guide explicitly states: "Mormon Church . . . is not an authorized title, and the Church discourages its use."[20]

### B.  Trademark Examiner Findings Concerning "Mormon"

Examiners have repeatedly denied registration of marks containing "Mormon" as generic or descriptive.  IRI's application for "MORMON" application serial number 78/161091 for "religious services" was denied for these reasons. IRI's trademark in the word "MORMON" was restricted to educational services, namely, providing classes, conferences, and institutes in the fields of history and religion, under class 41 and "genealogy services" under class 42.  IRI abandoned "MORMON" for class

---

[16] THE AMERICAN RELIGION: THE EMERGENCE OF A POST-CHRISTIAN NATION (New York: Simon and Shuster, 1992).

[17] JON KRAKAUER, UNDER THE BANNER OF HEAVEN: A STORY OF VIOLENT FAITH 7 (First Anchor Books 2004).

[18] See Church Style Guide, *available at*: www.mormonnewsroom.org/style-guide.

[19]    See    Church    Hashtag    Recommendations    *available    at*: http://www.mormonnewsroom.org/article/mormon-hashtag-recommendations.

[20] See Church Style Guide, *available at*: www.mormonnewsroom.org/style-guide.

45 services after an appeal of the examining attorney's final refusal.

Other examiners denied registration of marks using "Mormon" on similar grounds.  *See e.g.* application serial number 85/425334 for "MORMON SAVINGS" (August 14, 2012 Office Action);[21] application serial number 85/367530 for "THE MORMON MATCHMAKER" (April 23, 2012 Office Action),[22] application serial number 85/537316 for "MORMON IN MANHATTAN" (May 29, 2012 Office Action);[23] and application serial number 78/833327 for "BABY MORMON" (September 1, 2006 June 25, 2007 Office Actions).[24]

### C.  Pervasive and Widespread Online Use of "Mormon"

Many third party websites use "Mormon" in their domain names and logos, and display images of Mormon temples, and some host advertisements and market products to Mormon consumers.  These include:[25]

---

[21] http://tsdr.uspto.gov/documentviewer?caseId=sn85425334#docIndex=16&page=1.

[22] http://tsdr.uspto.gov/documentviewer?caseId=sn85367530#docIndex=4&page=1.

[23] http://tsdr.uspto.gov/documentviewer?caseId=sn85537316#docIndex=8&page=1.

[24] http://tsdr.uspto.gov/documentviewer?caseId=sn78833327#docIndex=1&page=1.

[25] From left to right, and top to bottom, these websites are: allaboutmormons.com, mormonartist.net, mormonhaven.com, mormonheretic.org, holyfetch.com, mormonyouth.org, onlymormon.com, newordermormon.org, exmormonscholarstestify.org, mormon-pioneer-trek.com, aboutmormonism.com, mormondiscussions.com, bookofmormononline.org, mormonchurch.com, funnymormons.com, mormonandcatholic.org, mormoncounseling.com, mormonblogs.org, mormonbudget.com, mormonfinance.com, mormon-underwear.com, ldsblogs.org, modernmormonmen.com, mormonmommyblogs.com, mormonmomswhoblog.blogspot.com, theexmormonmommyblog.blogspot.com, mormondisclosure.blogspot.com, gaymormonman.blogspot.com, mormonconverts.com, mormongamedesign.blogspot.com, mormonmysticism.com, mormonmagz.wordpress.com, mormonmonk.blogspot.com, mormonmigration.lib.byu.edu/about, mormonmilkman.livejournal.com, mormonthirdeye.blogspot.com, myriadmormonmusings.blogspot.com, themormonion.blogspot.com, mormoninquiry.typepad.com, swissbeckymormonblog.blogspot.com, themormonworker.wordpress.com, guidetostuffmormonslike.blogspot.com, mormonleft.blogspot.com, mormonwordles.com,



beliefnet.com/columnists/mormoninquiry, fromthemouthofamormon.blogspot.com, modernmollymormon.blogspot.com, greenmormonarchitect.blogspot.com, mormon-chronicles.blogspot.com, mormonmentality.org, mormon-church-history.blogspot.com, mormonlight.blogspot.com, themormonsarecoming.blogspot.com.

13



Similar websites solicit donations or sell products, subscriptions, or memberships:



26

---

<sup>26</sup> From left to right, and top to bottom, these websites are: mormonthink.com,

Finally, numerous dating websites brand as Mormon, including: [27]





### D. The Church's Logo and Mormon Match's Dissimilar Logo

Websites operated by the Church are identifiable by the Church's logo:



This logo and variations appear on Church sponsored websites including mormon.org, mormonnewsroom.org, mormonchannel.org, mormontabernaclechoir.org, lds.org, facebook.com/lds, josephsmith.net, overcomingpornography.org, and familysearch.org.

The Dating Website does not display the Church's logo.   It uses "Mormon" in domain names and displays its own Logo:

**MormonMatch**

---

feministmormonhousewives.org, iamanexmormon.com, postmormon.org, mormonhandbook,.com, saltlakemormonstudies.wordpress.com, mormonhistoryassociation.org, mormanity.blogspot.com, mormonwomenbare.com, exmormonfoundation.com, fairmormon.org, exmormon.org, mormonmatters.org, mormonstories.org, mormonexpression.com, mormonwomen.com, transfigurism.org.

[27] From left to right, and top to bottom, these websites are: themormonmatchmaker.com, meetmormonsingles,com, localmormonsingles.com, mormonmatchmaking.com, and mymormoncrush.com

It also states: "Mormon Match is not commercially affiliated with or endorsed by The Church of Jesus Christ of Latter-day Saints."[28]   The Logo trademark application expressly disclaims the words "Mormon" and "Match" apart from the Logo.

<u>**ARGUMENT**</u>

### I.   <u>IRI's Counterclaims are Legally Insufficient</u>

To survive a motion to dismiss, a pleading must contain sufficient factual matter to "be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The pleading must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Here, IRI's pleading fails because it is *implausible* on its face.  It does not allow the Court to "draw the *reasonable* inference" of liability.  *Id.* (Emphasis supplied); *see* Fed. R. Civ. P. 8(a)(2); *accord Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). IRI's claims fail to cross "the line from conceivable to plausible" and must be dismissed. *Iqbal*, 129 S.Ct. at 1950-51, quoting *Twombly*, 550 U.S. 544, 570 (2007). Indeed, IRI's case is a sham, requiring Court to ignore settled law and known facts.

IRI's federal Lanham Act, unfair competition, declaratory judgment and Texas common law infringement claims fail for the same reasons. *See*, *Marathon Manufacturing Co. v. Enerlite Products Corp.*, 767 F.2d 214, 217 (5th Cir.1985)) (infringement and unfair competition require the "same facts"), *citing Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Manufacturing*, 510 F.2d 1004, 1009-10 (5th Cir.1975), *cert. denied*, 423 U.S. 868 (1975). "The gravamen" for infringement or unfair competition actions is that "the challenged mark is likely to cause

---

[28] See www.dateamormon.com.

confusion." *Marathon Manufacturing*, 767 F.2d at 217 (5th Cir.1985) (citations omitted); see also *Society of Financial Examiners v. National Ass'n of Certified Fraud Examiners, Inc.*, 41 F.3d 223, 225 (5th Cir.1995), *cert. denied*, 515 U.S. 1103.   Even setting aside fair use, mere descriptiveness, and failure to police, there is simply no likelihood of confusion and IRI's claims fail.   *Oreck Corp. v. U.S. Floor Systems, Inc.*, 803 F.2d 166, 170 (5th Cir.1986), *cert. denied*, 481 U.S. 1069.   IRI also fails to plead facts supporting a cybersquatting claim.

## II.     Fair Use Bars IRI's Claims

Statutory fair use bars IRI's claims because Mormon Match is using "Mormon" (1) other than as a mark; (2) descriptively; and (3) fairly and in good faith.  15 U.S.C. § 1115(b)(4).   IRI fails to allege any facts showing otherwise.  Here, Mormon Match uses "Mormon" to mean "Mormon" and does not seek to trademark the word. Similarly, the Dating Website says it is not affiliated or endorsed by the Church.

While IRI alleges the Logo is "prominent" and stylized, this does not support IRI's legal conclusion of use as a mark.  Nearly identical facts did not sway the unanimous Supreme Court in *K.P. Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004); *see also In re Schmid Laboratories v. Youngs Drug Products Corp.*, 482 F.Supp 14, 20-21 (D.N.J. 1979) ("every aspect" of trade dress is intended to "catch the eye" but a term is "not being used as a trademark" unless it indicates source.)

This Court need look no further than the Supreme Court's unanimous 9-0 decision in *K.P. Permanent Make-Up, Inc.*  That case is materially indistinguishable and IRI's claims must be dismissed.  In *K.P. Permanent*, appellee Lasting Impression I, Inc.

("Lasting") had an incontestable mark using the words "mirco colors" used since 1992:[29]



In 1999, appellant K.P. Permanent Make-Up, Inc. ("K.P.") used the term "micro color" in its marketing brochures in a stylized font:[30]



Lasting sent a cease and desist letter and K.P. sought declaratory judgment of non-infringement because "micro color" is generic or merely descriptive. *Id.* at 1065. Lasting counterclaimed that K.P.'s use infringed its incontestable mark. *Id.* at 1066.

The Supreme Court held fair use protected K.P. because trademark law cannot "deprive commercial speakers of the ordinary utility of descriptive words," and a mark holder accepts the risk of confusion when it "decide[s] to identify its product with a . . . well known descriptive phrase." *K.P. Permanent Make-Up, Inc.*, 543 U.S. at 122.

Similarly, the Fifth Circuit long ago recognized that "a fair use of a term may be protected even if a likelihood of confusion exists" else a trademark holder could "appropriate a descriptive term for his exclusive use and so prevent others from accurately describing a characteristic of their goods." *Pebble Beach Co. v. Tour 18 1*

---

[29] *K.P. Permanent Make-up, Inc. v. Lasting Impression I, Inc.*, 328 F.3d 1061, 1073, app. A (9th Cir. 2003).
[30] *Id.* at app. B.

*Ltd.*, 155 F.3d 526, 547 n12 (5th Cir. 1998) quoting *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir. 1980), *cert. denied*, 450 U.S. 981 (1981).

These holdings merely implement fundamental principles of trademark law and the Congressional intent to protect descriptive speech. *Park 'N Fly*, 469 U.S.189 (1985). In *Park 'N Fly*, the majority explained the holding would not create monopolies on descriptive terms (*id.* at 206) because statutory provisions protect the public's right to use descriptive speech, (*id.* at 202). The statutory fair use defense is an essential protection, reflecting a legislative balance between quieting title to incontestable marks and protecting speech rights. It should protect Mormon Match here.

IRI's claims still fail even if Mormon Match uses "Mormon" "as a mark" under the judicial doctrine of nominative fair use. *Pebble Beach Company*, *supra*; *Century 21 Real Estate Corp. v. Lendingtree*, 425 F.3d 211(3d Cir. 2005); *New Kids on the Block v. New America Pub.*, 971 F.2d 302 (9th Cir.1992). Nominative fair use applies because (1) Mormon Match's dating services are not "readily identifiable" without use of "Mormon" (2) Mormon Match only uses the "reasonably necessary" word "Mormon," (and not "Mormon Tabernacle Choir," "Mormon Handicraft," or "Mormon Church"); and (3) a notice on the Dating Website negates any suggestion of Church affiliation, sponsorship, or endorsement. *Pebble Beach Company*, 155 F.3d at 545; *see also*, *Board of Supervisors for Louisiana State University v. Smack Apparel Company*, 550 F.3d 465, 488 (5th Cir.2008) (recognizing nominative fair use defense); *Illinois High School Ass'n v. GTE Vantage*, 99 F.3d 244, 246 (7th Cir. 1996) ("IHSA could not have sued Musburger or CBS for referring to 'March Madness' even in advertising if the term were used merely for identification.

III.     **IRI Fails to Allege Rights in Descriptive Uses of Mormon**

Here, "Mormon" as "an intended user or group of users of a product or service is merely descriptive."  *In re Planalytics, Inc.*, 70 USPQ2d 1453 (TTAB 2004) (GASBUYER merely descriptive of intended user of services for pricing and purchasing natural gas); *In re Camel Mfg. Co.*, 222 USPQ 1031 (TTAB 1984) (MOUNTAIN CAMPER merely descriptive of intended users of services for outdoor equipment and apparel).   The words "Mormon Match" and "dateamormon" simply describe a dating service provided by Mormons for Mormons.   Therefore, they don't identify "a single thing coming from a single source."  *Aloe Crème Labs. Inc. v. Milsan, Inc.*, 423 F.2d 845, 849 (5th Cir. 1970). As noted above, trademark law protects use of descriptive language.

IV.     **IRI Fails to Allege Rights to Mormon in Online Dating**

IRI fails to plead rights in online dating.   None of IRI's marks are registered for online dating, and IRI does not offer a dating service. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010); *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 10 (5th Cir. 1974).  Accordingly, IRI's claims fail.

To the extent IRI ever had rights to "Mormon" in online dating, it failed to police its Religious Marks and abandoned those rights.  Abandonment is "loss of trade significance" from widespread use; *Exxon Corp. v. Oxxford Clothes*, Inc., 109 F.3d 1070, 1080 (5th Cir.1997); *Exxon Corp. v. Texas Motor Exchange of Houston*, 628 F.2d 500, 504 (5th Cir.1980); Thomas McCarthy, McCarthy On Trademarks And Unfair Competition § 17:8 (2007).  As noted above, the word "Mormon" has widespread use in domain names and logos of numerous third party websites, including dating websites. Accordingly, IRI cannot plead exclusive rights in "Mormon" and its claims fail.

### V.    IRI Fails to Allege Likelihood of Confusion

IRI fails to plead a likelihood of confusion.  This is fatal to its claims, which must be dismissed.   "Incontestability does not relieve the owner of an incontestable registration from the burden of proving likelihood of confusion."  S. Rep. No. 100-515 (1988) (prepared with the 1988 Trademark Law Revision Act).

Here, (1) IRI's marks are weak.  (2) Where the common element is weak, similarity is reduced.[31]  (3) IRI and the Church do not offer online dating services.  (4) Mormon.org is directed at non-Mormons for conversion while the Dating Website is directed at Mormons for dating.  (5) IRI's marks are not advertised on online dating websites.  (6) Mormon Match is not using the Church's logo and the Dating Website displays a notice dispelling any suggestion of Church endorsement or affiliiation.  (7) IRI reviewed thousands of comments posted to the Dating Website and found no confusion. (8) Mormon Match's Mormon customers likely know the Church's repeated instructions that it should not be referred to as the "Mormon" church and are unlikely to be confused. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009).[32]

Likelihood of confusion requires "a probability," not mere possibility.  See *Id.* at 226.  IRI failed to find confusion after reviewing thousands of comments posted to the Dating Website.  Accordingly, further discovery on this issue is unnecessary.

---

[31] *See, e.g.*, *In re Bed & Breakfast Registry*, 791 F.2d 157, 229 USPQ 818 (Fed. Cir. 1986) (BED & BREAKFAST REGISTRY for making reservations in private homes held not likely to be confused with BED & BREAKFAST INTERNATIONAL for room booking agency services).

[32] Trademark infringement also requires "use in commerce" which IRI has not and cannot allege.  *Lamparello v. Falwell*, 420 F.3d 309, 314 (4th Cir. 2004) (use in commerce is a required element, but Court need not reach issue absent likelihood of confusion).

**VI.**     **IRI Fails to Plead with Particularity Required by Fed. R. Civ. P. 9(b)**

IRI failed to plead claims sounding in fraud "with particularity" as required by Fed. R. Civ. P. 9(b).  This failure is fatal to the claim.  *See Control Solutions, LLC v. Oshkosh Corp.*, 2011 WL 1131329 (N.D. Ill.) (unfair competition counterclaim subject to 9(b)); *See also*, *MPC Containment Sys., Ltd. v. Moreland*, No. 05 C 6973, 2006 WL 2331148 (N.D. Ill. Aug. 10, 2006) (dismissing Lanham Act unfair competition claim under 9(b));  *LT Int'l Ltd. v. Shuffle Master, Inc.*, 2014 WL 1248270, No. 2:12–cv–1216 (D. Nev. March 26, 2014) (Lanham Act false advertising claim dismissed under 9(b)).  Here, IRI utterly fails to allege what is false or misleading about using "Mormon" to advertise dating services by Mormons for Mormons.

**VII.**     **IRI Fails to Allege Cybersquatting**

Cybersquatting under the Anti Cybersquatting Consumer Protection Act ("ACPA") is "the practice of registering 'well-known brand names as Internet domain names' in order to force the rightful owners of the marks 'to pay for the right to engage in electronic commerce under their own brand name.'" *Virtual Works, Inc. v Volkswagen of America, Inc.*, 238 F.3d 264, 267 (4th Cir. 2001) (quoting S. Rep. No. 106-140, at 4 (1999)).  Here, IRI fails to plead an ACPA claim.  Specifically, IRI fails to plead facts showing dateamormon.com or mormon-match.com is confusingly similar to any of IRI's marks, that "Mormon" was distinctive or famous when Mormon Match registered its domain, or that Mormon Match was motivated by a bad faith intent to profit from any of IRI's marks.  *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 670 (5th Cir. 2000).  Numerous third party Mormon websites conclusively refute such speculations.

## VIII.   IRI's Declaratory Judgment Action Should be Dismissed

The Court should dismiss IRI's claim seeking a declaration of infringement for the additional reason that it is duplicative of the opposition proceeding IRI commenced before the Trademark Board.  The Trademark Board does not allow a party to avoid a dispositive motion by commencing a civil court proceeding.  TBMP s. 510.02(a); *Boyds Collection Ltd. v. Herrington & Co.*, 65 USPQ2d 2017, 2019 (TTAB 2003).  Here, Eller moved to dismiss IRI's opposition in on April 5, 2014, well before IRI commenced a declaratory judgment counterclaim.  Thus, the Trademark Board will decide the registration issues in resolving the motion to dismiss. IRI's assertions that the Logo should not be registered or that the application is *void ab initio* are not only demonstrably meritless, but are properly raised elsewhere.

## IX.   The Court Should Grant Mormon Match Judgment on the Pleadings

For all the reasons stated herein, the Court should grant Mormon Match judgment on the pleadings.  Here, Mormon Match has the right to call itself Mormon Match and to display a photograph of the Salt Lake Temple, as many other websites do. Avoiding a forced choice between abandoning its rights or risking liability "was the very purpose of the Declaratory Judgment Act."  *MedImmune v. Genentech*, 549 U.S. 118, 129 (2007); *see Texas v. West Pub. Co.*, 882 F.2d 171, 175 (5th Cir. 1989) (trademark and patent declaratory judgment claims share a common framework).  Fair use, mere descriptiveness, failure to police, and lack of confusion all establish no infringement. The Court should grant Mormon Match judgment on the pleadings.

X.      **The Court Should Strike IRI's Defenses as Insufficient**

"The court may strike from a pleading an insufficient defense." Fed. R. Civ. P. 12(f). Here, IRI's seven affirmative defenses are insufficient. Mormon Match has alleged that *everyone* has the right to call a Mormon dating website "Mormon" because Mormon is descriptive and that Eller paid for the Dating Website. Thus, IRI's first and third affirmative defenses that Plaintiffs "do not own" the Dating Website and have no rights to use Mormon should be struck. IRI also mistakenly states that Mormon Match has "failed to join one or more required parties." Here, Mormon Match is the company operating the Dating Website at issue and Eller is the applicant for a trademark in its Logo. Accordingly, IRI's defense should be struck.

Plaintiff has not challenged the validity of any of IRI's registered marks. Accordingly, IRI's fourth affirmative defense which relates to a defense IRI could assert against a validity challenge is insufficient, "immaterial," and "impertinent" and should be struck. Fed. R. Civ. P. 12(f). Plaintiff's pleadings have not contradicted his statements to the PTO. Accordingly, IRI's fifth and sixth affirmative defenses of unclean hands and estoppel must be struck. Finally, Eller commenced this action on a Monday, in response to a letter IRI drafted the previous Friday. Thus, IRI's assertion that Mormon Match "unreasonably delayed" is meritless and its seventh affirmative defense of laches should be struck.

## <u>CONCLUSION</u>

For each and every one of the foregoing reasons, Plaintiff respectfully requests that the Court dismiss IRI's claims and grant judgment on the pleadings under Fed. R. Civ. P. 12(b)(6) and (c), and grant such further relief as may be just and proper.

Respectfully submitted,

___/Siddartha Rao/___
Siddartha Rao, Esq.
*Counsel for Plaintiff*
Admitted *pro hac vice*
121 E. 12th St. Apt. LG
New York, New York 10003
(646) 221 1846

Kiernan McAlpine, Esq.
*Local counsel for Plaintiff*
(Admitted in the Southern District)
3310 Louisiana St Ste 2413
Houston, TX 77006
(832)314-1383
Fax: (832)201-7814